■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LYLE H. TOMASKY, Appellant. [828 NYS2d 625]—

Mugglin, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered August 30, 2005, upon a verdict convicting defendant of the crimes of criminal contempt in the first degree and criminal contempt in the second degree.

Following defendant's conviction of criminal contempt in the first degree and criminal contempt in the second degree, his pro se motion pursuant to CPL 440.10 (1) (f) was converted by County Court to a CPL 330.40 motion. Defendant sought to set aside the verdict based on trial counsel's alleged conflict of interest and ineffective assistance. County Court denied the motion and defendant was sentenced to concurrent prison terms of 1¹/₃ to 4 years for first degree criminal contempt and one year for second degree criminal contempt, and he now appeals.

We affirm. First, we find no merit to defendant's contention

that the verdict as to each crime was not supported by legally sufficient evidence. Viewing the evidence in the light most favorable to the prosecution reveals the existence of a valid line of reasoning with permissible inferences from which a rational person could reach the same conclusion as the trial jury (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Haight*, 19 AD3d 714, 715 [2005], *lv denied* 5 NY3d 806 [2005]). Despite the existence of two separate orders of protection which prohibited defendant from communicating with the victim in any fashion, defendant repeatedly telephoned the victim on July 20, 2004 and July 29, 2004. Although defendant claimed that his purpose in making these telephone calls was to arrange visitation with his son, the record reveals that defendant's paternity has never been established, defendant's name is not on the child's birth certificate and defendant has no legal right to visit the child in question. These circumstances, combined with the evidence of defendant's previous violent and abusive conduct toward the victim which precipitated the orders of protection, allow the jury to reasonably conclude that defendant's purpose in telephoning the victim was simply to "harass, annoy, threaten or alarm" her and lacked any particular legitimate purpose (Penal Law § 215.51 [b] [iv]).

Likewise, we reject defendant's claim that the verdict is against the weight of the evidence. Viewing the evidence in a neutral light and giving due deference to the jury's credibility determinations (*see People v Durant*, 6 AD3d 938, 941 [2004], *lv denied* 3 NY3d 639 [2004]), we conclude that the jury accorded the appropriate weight to the evidence in reaching its verdict (*see People v Bleakley, supra* at 495). Clearly, the jury rejected defendant's uncorroborated testimony attempting to establish that his phone calls were made for legitimate purposes without any criminal intent.

Next, we have carefully examined, individually and cumulatively, defendant's contentions that his trial counsel was ineffective. These contentions include an alleged conflict of interest because his trial counsel's firm represented the victim in a prior divorce action, counsel's failure to properly object to prosecution evidence, his failure to properly prepare for trial by refusing to locate defense witnesses and obtain evidence, his failure to object to prosecutorial misconduct and his failure to request appropriate and timely instructions with respect to juror note taking. Our review of the record, in accordance with the principles enunciated in *People v Baldi* (54 NY2d 137, 146-147 [1981]), leaves us unpersuaded. As some of defendant's claims find no record support or are belied by the record, we address

only the rest. First, with respect to the claimed conflict of interest, defendant must demonstrate not only that the conflict of interest existed, but that it impacted the conduct of his defense (*see People v Abar*, 99 NY2d 406, 409 [2003]; *People v Sousa*, 23 AD3d 697, 699 [2005], *lv denied* 6 NY3d 781 [2006]). Here, the matrimonial action was remote in time to the present prosecution and the record fails to demonstrate that trial counsel had any personal involvement with the victim either in that action or between that action and this trial. Under these circumstances, we perceive that the alleged conflict of interest had no impact on defendant's defense, particularly given counsel's vigorous cross-examination of the victim which included many questions concerning her prior bad acts and criminal history (*see People v Nash*, 273 AD2d 696, 698 [2000]; *People v Jenkins*, 256 AD2d 735, 736-737 [1998], *lv denied* 93 NY2d 854 [1999]; *People v Salsman*, 185 AD2d 469, 469-470 [1992], *lv denied* 80 NY2d 934 [1992]). Second, defendant's allegation that trial counsel failed to pursue defense witnesses and evidence is unfounded. When County Court gave the successor defense attorney the opportunity to obtain such evidence, he was unable to locate such witnesses or evidence.

As a final matter, defendant has demonstrated no prejudice flowing from alleged prosecutorial misconduct or County Court's alleged failure to give cautionary instructions to the jury with regard to note taking (*see People v McCombs*, 18 AD3d 888, 890 [2005]; *People v Robinson*, 16 AD3d 768, 770 [2005], *lv denied* 4 NY3d 856 [2005]; *People v Dexheimer*, 214 AD2d 898, 902 [1995], *lv denied* 86 NY2d 872 [1995]). In sum, as defendant admitted making the calls, his trial counsel reasonably adopted a legitimate trial strategy of disputing only the intent and purpose elements of the charged crimes. Although this strategy proved unsuccessful, a losing strategy is not sufficient to establish the lack of meaningful representation (*see People v Jackson*, 25 AD3d 1012, 1015 [2006], *lv denied* 6 NY3d 849 [2006]).

Cardona, P.J., Mercure, Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.