[931 NE2d 70, 905 NYS2d 101]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAMIEN DEVONE, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SADDIQ ABDUR-RASHID, Appellant.

Argued April 27, 2010; decided June 8, 2010

## POINTS OF COUNSEL

*Mark J. Caruso, Public Defender,* Schenectady (*Kent J. Gebert* of counsel), for appellant in the first above-entitled action. I. Trooper Wheeler's use of narcotics detecting canine "Kane" to "canine sniff" the exterior of the motor vehicle in which defendant Damien Devone was a passenger constitutes a search within the meaning of article I, § 12 of the New York State Constitution. (*People v Reyes,* 154 Misc 2d 476; *People v Ramirez-Portoreal,* 88 NY2d 99; *People v Natal,* 75 NY2d 379; *People v Reynolds,* 71 NY2d 552; *Katz v United States,* 389 US 347; *People v Young,* 207 AD2d 465; *People v Class,* 63 NY2d 491; *People v Mercado,* 68 NY2d 874; *People v Whitfield,* 81 NY2d 904; *People v Rodriguez,* 69 NY2d 159.) II. Trooper Wheeler and Officer Borwhat did not meet the reasonable suspicion standard to conduct a search for illicit contraband when they performed the traffic stop. New York courts have afforded greater protection against intrusive searches under New York State Constitution, article I, § 12 than has been provided under the Fourth Amendment to the United States Constitution. (*People v Scott,* 79 NY2d 474; *People v Reynolds,* 71 NY2d 552; *People v P.J. Video,* 68 NY2d 296; *People v Dunn,* 77 NY2d 19; *People v Young,* 207 AD2d 465; *People v De Bour,* 40 NY2d 210; *People v Offen,* 78 NY2d 1089; *People v Willette,* 42 AD3d 674; *People v Carter,* 199 AD2d 817; *Illinois v Caballes,* 543 US 405.)

*Robert M. Carney, District Attorney,* Schenectady (*Peter H. Willis* of counsel), for respondent in the first above-entitled action. I. The use of a drug detecting dog to smell the air on the exterior of an individual's vehicle does not constitute a search under either the United States or New York Constitution. (*People v Manganaro,* 176 AD2d 354; *People v Chestnut,* 43 AD2d 260; *People v Price,* 54 NY2d 557; *People v Offen,* 78 NY2d 1089; *People v Gathogo,* 276 AD2d 925; *People v Leon,* 23 AD3d 1110; *People v Martin,* 169 AD2d 1006; *People v Belton,* 55 NY2d 49; *People v Weaver,* 12 NY3d 433; *Illinois v Caballes,* 543 US 405.) II. If the use of a drug detecting dog constitutes a search under

New York State law, such use was appropriate because the police possessed a founded suspicion of criminal activity. (*People v Carter,* 199 AD2d 817; *People v Battaglia,* 206 AD2d 916; *People v Hollman,* 79 NY2d 181; *People v Yancy,* 86 NY2d 239; *People v Harrison,* 57 NY2d 470; *People v Kelly,* 37 AD3d 866.)

*Peter B. Meadow,* Woodbourne, for appellant in the second above-entitled action. I. Under article I, § 12 of the New York State Constitution, a canine sniff of a vehicle should only be authorized if there is reasonable suspicion that the vehicle contains illegal drugs. (*United States v Place,* 462 US 696; *Illinois v Caballes,* 543 US 405; *United States v Jacobsen,* 466 US 109; *People v Dunn,* 77 NY2d 19; *United States v Thomas,* 757 F2d 1359; *People v Moore,* 6 NY3d 496; *People v De Bour,* 40 NY2d 210; *Terry v Ohio,* 392 US 1; *Camara v Municipal Court of City & County of San Francisco,* 387 US 523; *Warden, Md. Penitentiary v Hayden,* 387 US 294.) II. The trial court erred in denying defendant's motion to suppress as the use of the canine to sniff the car was not based on reasonable suspicion or founded suspicion of the presence of illicit drugs. (*Illinois v Caballes,* 543 US 405; *People v Willette,* 42 AD3d 674; *People v Dunn,* 77 NY2d 19; *United States v Richardson,* 385 F3d 625; *United States v Santos,* 403 F3d 1120.) III. The Court of Appeals should reevaluate the application of the "automobile exception" to the New York State Constitution protection against governmentally intrusive searches and seizures and prohibit warrantless automobile searches absent exigent circumstances. (*Katz v United States,* 389 US 347; *New York v Belton,* 453 US 454; *Pennsylvania v Labron,* 518 US 938; *United States v Ross,* 456 US 798; *California v Carney,* 471 US 386; *People v Weaver,* 12 NY3d 433; *People v Blasich,* 73 NY2d 673; *People v Gokey,* 60 NY2d 309; *People v Scott,* 79 NY2d 474; *People v Dunn,* 77 NY2d 19.)

*Beth G. Cozzolino, District Attorney,* Hudson (*Henry Neal Conolly* of counsel), for respondent in the second above-entitled action. I. A canine search is permissible and should be authorized under the New York State Constitution under well-meant and continued precedent. (*People v Dunn,* 77 NY2d 19; *United States v Place,* 462 US 696; *People v De Bour,* 40 NY2d 210; *People v Devone,* 57 AD3d 1240, 12 NY3d 852; *Terry v Ohio,* 392 US 1.) II. The County Court and the Appellate Division did not err in holding that there was a founded suspicion or reasonable basis to sustain the canine sniff of the exterior of defendant's vehicle. (*People v De Bour,* 40 NY2d 210; *People v Pierre,* 8 AD3d

904.) III. Under existing precedent, where appellant had diminished expectations of privacy in his vehicle, Trooper Colwell had a reasonable suspicion for a canine sniff and probable cause to search the trunk of appellant's car. No change to New York State precedent is implicated. (*People v Gathogo,* 276 AD2d 925, 96 NY2d 734; *People v Guido,* 175 AD2d 364; *United States v Ross,* 456 US 798; *People v Weaver,* 12 NY3d 433; *People v Dunn,* 77 NY2d 19.)

## OPINION OF THE COURT

Pigott, J.

These appeals raise two issues, whether a canine sniff of the exterior of a lawfully stopped vehicle constitutes a search under article I, § 12 of our State Constitution and, if so, what level of suspicion is required before law enforcement can conduct that search. We hold that such action constitutes a search requiring founded suspicion that criminal activity is afoot and that, in each of these cases, such founded suspicion was established. The orders of the Appellate Division should therefore be affirmed.

### *People v Devone*

On August 1, 2007, two police officers pulled over a vehicle after observing its operator, Troy Washington, talking on a cell phone. Washington, who was unable to produce his driver's license or registration, told the officers that the vehicle was registered to his cousin. Asked his cousin's name, Washington said that he did not know. When the officer asked for the cousin's whereabouts he pointed to defendant, who was seated in the passenger seat. When the officers ran the license number they discovered that the vehicle, while not reported stolen, was registered to a female. Because of the "suspicious inconsistencies" in Washington's answers, the officers decided to conduct a canine sniff of the exterior of the vehicle. Washington and defendant were ordered out of the vehicle, and the officers retrieved a dog, trained in detecting narcotics, from their SUV.

After sniffing the exterior of the vehicle, the dog "alerted" at the pillar between the driver and rear passenger seat windows, indicating to the officers the presence of drugs. One of the officers opened the driver's side door and commanded the dog to search. The dog scratched at the console between the driver and passenger seats. A search of the console uncovered a quantity of crack cocaine.

Subsequent to his indictment for criminal possession of a controlled substance in the third and fourth degrees, defendant moved to suppress the drugs as the product of an illegal search. After a hearing, County Court held that the canine sniff constituted a search, and that the police lacked reasonable suspicion to conduct the canine sniff. The Appellate Division, Third Department reversed, holding that the police needed only founded suspicion as opposed to a reasonable suspicion to conduct a canine sniff of the vehicle's exterior (57 AD3d 1240, 1242-1243 [3d Dept 2008]).

### People v Abdur-Rashid

On July 27, 2007 at 10:30 A.M., a police officer effected a lawful stop of defendant's vehicle, which had no front license plate. Although the officer initially suspected that defendant's insurance had lapsed, he received verification from the insurance carrier that the insurance was in effect. The officer wrote defendant a ticket for a missing front license plate and expired inspection sticker, but permitted defendant to go on his way.

Approximately 45 minutes later, another police officer effected a lawful stop of defendant's vehicle on the Taconic State Parkway in Columbia County, having observed that it was missing its front license plate and had sticks, twigs and other debris protruding from the front of it. A check of the license number showed that defendant was the registered owner of the vehicle, but also showed, incorrectly, that the insurance on the vehicle had lapsed.

Defendant showed the officer a ticket he had been issued for the inspection sticker violation, and apprised the officer about the prior stop and insurance mix-up. Unsure whether defendant had shown him all previously-issued tickets, the officer directed defendant out of the vehicle. The officer tried to contact the first officer by cell phone and police radio to verify defendant's account, but was unable to do so. During this time, defendant stood outside the passenger side of the SUV. According to the officer's suppression testimony, defendant "started to get a little fidgety and nervous," was "leaning towards my vehicle and [was] trying to look through the window, towards the back" at the narcotics-sniffing dog. The officer told defendant, "Yeah, I really do have a dog in here." Defendant responded, "I already got my ticket today. Can't you just let me go? I need to go."

The officer returned to defendant's vehicle and spoke with the passenger, Ekwambu Gayle, who had remained seated. Gayle

gave the officer a convoluted tale of being involved in a minor accident upon entering the roadway, concluding with an implausible story that defendant picked him up on Long Island, that his job was to keep defendant awake en route to Schenectady, and that defendant was going to drive back from Schenectady to Brooklyn to drop Gayle off mid-afternoon and then return, alone, to Schenectady later that evening.

Suspecting more than a joy ride, the officer directed Gayle out of the vehicle and retrieved his narcotics-sniffing dog from the SUV. As the dog circled the vehicle, it "alerted" to the driver's side door and attempted to climb through the window. When the officer opened the door the dog jumped into the backseat and "alerted" near the rear speaker on the passenger side. After removing the dog from the vehicle, the officer took the keys from the ignition and walked the dog toward the rear of the vehicle. The dog once again "alerted" and the officer opened the trunk. There he found a black duffel bag, which the dog tried to grab from his hands. Defendant claimed no knowledge of the duffel bag. Upon inspection, it was found to contain two freezer bags of cocaine.

Following defendant's indictment for criminal possession of a controlled substance in the first degree, County Court conducted a suppression hearing and concluded that the search was lawful. The Appellate Division, Third Department affirmed, holding that the officer properly conducted an exterior canine sniff of the vehicle based upon "a founded suspicion that criminality was afoot" (64 AD3d 1087, 1089 [3d Dept 2009]).

Leave to appeal to this Court was granted in both cases and we now affirm.

In *People v Dunn*, this Court held as a matter of state constitutional law that the use of a canine sniff in the hallway of an apartment building to detect the presence of controlled substances inside an apartment constitutes a search (77 NY2d 19, 25 [1990], *cert denied* 501 US 1219 [1991]). We rejected the Supreme Court's approach in *United States v Place* (462 US 696 [1983]) that a canine sniff does not constitute a search because it discloses only the presence or absence of contraband, observing "that the fact that a given investigative procedure can disclose only evidence of criminality should have little bearing on whether it constitutes a search" (*Dunn*, 77 NY2d at 24). Rather, we concluded that the analysis should "focus on whether there has been an intrusion into an *area* where an individual has a

reasonable expectation of privacy" (*id*. at 25 [emphasis supplied]).

We applied a similar standard in *People v Price*, where we held that the canine sniff of the defendant's luggage did not violate either federal or state constitutional standards or statutory law (54 NY2d 557, 564 [1981]). Our analysis, once again under state law, centered on the reduced expectation of privacy one has relative to luggage placed in the hands of a common carrier (*see id*. at 563-564; *Dunn*, 77 NY2d at 24).

■ Based on our state jurisprudence, therefore, whether a canine sniff constitutes a search is necessarily dependent upon whether it constitutes an intrusion into a place where a person has a reasonable expectation of privacy. One clearly has a greater expectation of privacy in one's home than in an automobile (*see New York v Class*, 475 US 106, 112-113 [1986]), but that does not render the latter interest undeserving of constitutional protection (*see Arizona v Gant*, 556 US —, —, 129 S Ct 1710, 1720 [2009] [addressing warrantless searches of automobiles]). There is a legitimate, albeit reduced, expectation of privacy in an automobile. But that expectation is greater than the significantly reduced expectation of privacy one has in luggage turned over to a common carrier. We therefore hold that a canine sniff of the exterior of an automobile constitutes a search under article I, § 12.

■ In both of these cases the Appellate Division properly concluded that the officers' "founded suspicion" that criminality was afoot provided sufficient grounds for the search. While the more demanding "reasonable suspicion" standard applies to a canine sniff outside the door of one's residence (*see Dunn*, 77 NY2d at 26), there is a "diminished expectation of privacy attributed to individuals and their property when traveling in an automobile" (*People v Yancy*, 86 NY2d 239, 246 [1995]). It follows that law enforcement need only meet a lesser standard before conducting a canine sniff of the exterior of a lawfully stopped vehicle. Given that diminished expectation of privacy, coupled with the fact that canine sniffs are far less intrusive than the search of a residence and provide "significant utility to law enforcement authorities" (*Dunn*, 77 NY2d at 26), application of the founded suspicion standard in these cases is appropriate.

■■ There is record support in each of these appeals for the Appellate Division holdings that police possessed a founded

suspicion to conduct the canine sniff. In *Devone*, Washington's inability to produce his driver's license and registration for the vehicle, coupled with his responses that his cousin owned the vehicle, that he did not know his cousin's name, and that defendant was his cousin—together with the fact that the vehicle was registered to a female and not defendant—gave the officers a founded suspicion that criminal activity was afoot, justifying the canine sniff. Similarly, in *Abdur-Rashid*, the condition of defendant's vehicle, the unusual travel plans of defendant and Gayle, and defendant's "nervous" behavior gave the officer a similar founded suspicion that criminal activity was afoot.

Accordingly, the orders in *Devone* and *Abdur-Rashid* should be affirmed.

CIPARICK, J. (dissenting). Because I believe that the reasonable suspicion standard should be met before law enforcement conducts an exterior canine sniff of a vehicle, I respectfully dissent.

In *People v Dunn* (77 NY2d 19 [1990]), we held that an exterior canine sniff constitutes a search within the meaning of article I, § 12 of the New York Constitution (*id.* at 25). We further held that reasonable suspicion that defendant's apartment contained illegal drugs was required before law enforcement could conduct a canine sniff in the common hallway outside the apartment (*id.* at 26). To determine this standard, we balanced the degree of the search's intrusion against its utility (*see id.*; *see also People v Kuhn*, 33 NY2d 203, 209 [1973] [reasonableness of search determined "by 'balancing the need to search against the invasion which the search entails' "]). Because exterior canine sniffs are "uniquely discriminate and nonintrusive" and of "significant utility to law enforcement authorities," we found that they "may be used without a warrant or probable cause, provided that the police have a reasonable suspicion that a residence contains illicit contraband" (*Dunn*, 77 NY2d at 26). Conducting the same balancing here, I do not see any reason to depart from the reasonable suspicion standard we articulated in *Dunn*.

It is well-settled that an individual has a legitimate expectation of privacy with respect to spaces within a vehicle that cannot be viewed from the outside (*see People v Class*, 63 NY2d 491, 495 [1984]), and law enforcement must usually have probable cause before searching any of these areas (*see People v Yancy*, 86 NY2d 239, 245 [1995]). This is, of course, the same level of suspicion required before law enforcement may search a

residence (*see e.g. People v Brown*, 96 NY2d 80, 88 [2001]), though automobile searches may be conducted without a warrant (*see Yancy*, 86 NY2d at 245-246). While it is true that, generally speaking, an individual has a lesser expectation of privacy in a car than in a home (*see Yancy*, 86 NY2d at 245-246), this distinction has never affected the standard required to search areas of a vehicle shielded from outside view, and it should not now justify a search of these private spaces based on mere founded suspicion rather than the reasonable suspicion standard applied to residences and their thresholds (*see Dunn*, 77 NY2d at 26).* Indeed, prior to today, the predicate of founded suspicion of criminality adopted by the majority would have permitted no more than a request to search, not a search itself (*see People v Dunbar*, 5 NY3d 834, 835 [2005]; *People v Hollman*, 79 NY2d 181, 191-192 [1992]).

Where our law distinguishes between vehicular and residential privacy, it does so because of pragmatic considerations not present in this case. The automobile exception to the warrant requirement, for example, was born of expediency, not a general finding that private areas of a vehicle are not entitled to protection (*Yancy*, 86 NY2d at 245-246 [considering "the mobility of the vehicle and the corresponding probability that any contraband contained therein will quickly disappear, and the diminished expectation of privacy attributed to individuals and their property when travelling in an automobile"]). Here, unlike in *Yancy*, there is no reason why the contents of a car's trunk or console should be afforded less constitutional protection than the contents of one's home. In fact, the officers in *Yancy* were justified in conducting a warrantless search of the automobile based on "incidental observation of hundreds of separately packaged empty vials and caps in open view following a valid automobile stop" (*id.* at 246). Thus, I believe that, as in *Dunn*, the minimal intrusiveness of an exterior canine sniff justifies requiring such a search to be predicated on reasonable suspicion.

---

* Under our traditional *De Bour* formulation governing the appropriate level of suspicion in police-citizen encounters, level one requires that police have "an objective, credible reason, not necessarily indicative of criminality"; level two requires "a founded suspicion that criminal activity is afoot"; level three requires "a reasonable suspicion that the particular individual was involved in a felony or misdemeanor"; and level four "requires probable cause to believe that the person . . . has committed a crime" (*People v Moore*, 6 NY3d 496, 498-499 [2006]; *see also People v De Bour*, 40 NY2d 210, 223 [1976]).

Moreover, the predicate for a canine sniff selected by the majority, founded suspicion that criminal activity is afoot, is divorced from the realities of the encounter. By way of example, the canine in *Devone* could not assist the officers in ascertaining whether defendant's vehicle was stolen, as originally suspected. Trained canines are capable only of detecting drugs. Yet the majority allows such a search without requiring any suspicion of illegal drug activity. Without a nexus between the suspicion held by the police and the capability of the canine, the probe sanctioned by the majority is but a fishing expedition.

Particularly in light of New York's strong tradition of protecting our citizens from unreasonable searches under article I, § 12 of the New York Constitution, I believe the appropriate level of suspicion that must be present before law enforcement conducts an exterior canine sniff search of a vehicle is the standard of reasonable suspicion of the presence of illicit drugs in the vehicle, not the lesser "founded suspicion" standard chosen by the majority here.

Accordingly, I would reverse both orders of the Appellate Division.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge CIPARICK dissents and votes to reverse in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

In each case: Order affirmed.