McCarthy, J.
Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered September 20, 2012, upon a verdict convicting defendant of the crimes of rape in the first degree, criminal sexual act in the first degree, criminal contempt *1160 in the first degree, criminal contempt in the second degree and tampering with a witness in the fourth degree.
Defendant’s ex-girlfriend (hereinafter the victim), who was also the mother of two of his children, accused defendant of raping her during a domestic dispute. At the time, a stay-away order of protection prohibited defendant from being in her presence or contacting her in any way. A new order of protection was entered, but defendant repeatedly attempted to call the victim from jail. He reached her twice and attempted to discourage her from cooperating with the police or prosecution. Following a trial, a jury convicted defendant of rape in the first degree, criminal sexual act in the first degree, criminal contempt in the first degree, criminal contempt in the second degree and tampering with a witness in the fourth degree. County Court sentenced defendant to an aggregate term of 22 years in prison and 15 years of postrelease supervision. Defendant appeals.
The jury’s verdict was not against the weight of the evidence. Defendant only specifically challenges the verdict on the count of criminal contempt in the first degree. That count required proof that, “in violation of a duly served order of protection,” defendant, “with intent to harass, annoy, threaten or alarm a person for whose protection such order was issued, repeatedly ma[de] telephone calls to such person, whether or not a conversation ensue[d], with no purpose of legitimate communication” (Penal Law § 215.51 [b] [iv]). This Court must “weigh the evidence in light of the elements of the crime as charged without objection by defendant” (People v Noble, 86 NY2d 814, 815 [1995]; accord People v Cooper, 88 NY2d 1056, 1058 [1996]). The charge included all of the statutory language. In addition to the orders of protection and proof that defendant was personally served with them, the People submitted phone records and recordings indicating that defendant attempted to call the victim more than 50 times during the five days following the rape and actually spoke to the victim twice. The jury could find that the sheer volume of calls indicates an intent to harass or annoy the victim, but defendant also called back when the victim told him to stop calling and hung up on him (see People v Soler, 52 AD3d 938, 940 [2008], lv denied 11 NY3d 741 [2008]). Combined with defendant’s prior abusive relationship with the victim that resulted in the orders of protection, this evidence was sufficient to allow the jury to conclude that defendant was contacting the victim to harass or annoy her, without any legitimate purpose (see People v Tomasky, 36 AD3d 1025, 1025-1026 [2007], lv denied 8 NY3d 927 [2007]).
County Court did not err in allowing evidence of the history *1161 of domestic violence between defendant and the victim. While not admissible to demonstrate bad character generally or a propensity to commit the charged crimes, “evidence of uncharged crimes or bad acts may be admitted if it establishes an element of the crime charged, such as the element of forcible compulsion in a rape case, is inextricably interwoven with the charged crime[ ], provide[s] necessary background^] . . . completed] a witness’s narrative, or falls within the five general Molineux exceptions” (People v Higgins, 12 AD3d 775, 777-778 [2004], lv denied 4 NY3d 764 [2005] [internal quotation marks and citations omitted]; see People v Cook, 93 NY2d 840, 841 [1999]). “Indeed, £[p]rior bad acts in domestic violence situations are more likely to be considered relevant and probative evidence because the aggression and bad acts are focused on one particular person, demonstrating the defendant’s intent [and] motive’ ” (People v Burkett, 101 AD3d 1468, 1470 [2012], lv denied 20 NY3d 1096 [2013], quoting People v Westerling, 48 AD3d 965, 966 [2008]). Testimony from the victim’s sister and brother-in-law concerning the turbulent nature of defendant’s relationship with the victim was relevant and probative evidence on the issues of intent and forcible compulsion and provided necessary background regarding their history (see People v Higgins, 12 AD3d at 777-778).
County Court did not err in admitting photographs of the victim taken during her medical examination. The sanction for failing to produce discoverable evidence pursuant to CPL 240.20 is left to the sound discretion of the trial court (see CPL 240.70 [1]; People v Jenkins, 98 NY2d 280, 283-284 [2002]; People v Carpenter, 88 AD3d 1160, 1161 [2011]). “Preclusion of evidence is a severe sanction, not to be employed unless any potential prejudice arising from the failure to disclose cannot be cured by a lesser sanction” (People v Jenkins, 98 NY2d at 284). The People did not provide defendant with copies of the photographs when he demanded them.* The People represented that they showed defense counsel the photographs several months before trial, although counsel could not remember whether he had seen them. Defendant argued that he consulted with a medical expert who requested the photographs, thereby causing him prejudice. Based on the content of the photographs, which were not particularly clear and depicted only light scratches and petechiae on the victim’s shoulder and wrist, and considering that the People did supply the photographs three days before *1162 trial, we cannot say that County Court abused its discretion in denying defendant’s request to preclude the photographs.
County Court properly allowed admission of statements that the victim made during her medical examination. “Hospital records fall within the business records exception to the hearsay rule as long as the information relates to diagnosis, prognosis or treatment” (People v Wright, 81 AD3d 1161, 1164 [2011], lv denied 17 NY3d 803 [2011] [citation omitted]; see People v Ortega, 15 NY3d 610, 617 [2010]; see also CPLR 4518; CPL 60.10). Details of the abuse, even including the perpetrator’s identity, may be relevant to diagnosis and treatment when the assault occurs within a domestic violence relationship because the medical provider must consider the victim’s safety when creating a discharge plan and gauging the patient’s psychological needs (see People v Ortega, 15 NY3d at 618-619; People v Wright, 81 AD3d at 1164). The physician who examined the victim testified that all of the information in the medical records was relevant to and gathered for purposes of diagnosis or treatment, and the primary purpose of the examination was to care for the patient’s health and safety, although a secondary purpose of the forensic examination was to gather evidence that could be used in the future for purposes of prosecution. Considering this information, although the victim was unavailable to testify because she died before trial (from causes unrelated to defendant’s crimes), defendant’s Confrontation Clause rights were not violated because the statements were not testimonial (see Giles v California, 554 US 353, 376 [2008]; White v Illinois, 502 US 346, 356-357 [1992]; People v Duhs, 16 NY3d 405, 409-410 [2011]).
The victim’s statements to her brother-in-law were admissible as excited utterances. He testified that when he received a phone call from the victim, she was crying, upset and breathing heavily, and stated that defendant had just raped her and would not leave her house. When the brother-in-law arrived at her house approximately five minutes later, defendant was still in the house, getting dressed, and the victim was crying, pacing, physically messy and screaming at defendant, “I can’t believe you did this to me” and “why would you do that.” The record indicates that when the victim made these statements she was still under the continuing stress of the upsetting event, such that her comments were “not the product of studied reflection and possible fabrication” (People v Auleta, 82 AD3d 1417, 1419 [2011], lv denied 17 NY3d 813 [2011] [internal quotation marks and citation omitted]; accord People v Blackman, 90 AD3d 1304, 1308 [2011], lv denied 19 NY3d 971 [2012]).
*1163 Similarly, defense counsel was not ineffective for failing to object to testimony by the victim’s sister as hearsay. The sister testified regarding the contents of a voicemail message left by the victim, apparently directly before she called and spoke to the brother-in-law. Because that message was left before the victim made later statements that County Court—and we— deemed admissible as excited utterances, the message would also be admissible under that hearsay exception. Counsel also would not have been successful if he had made an objection based on the best evidence rule. Secondary evidence of the contents of an unproduced original document is permissible where there is proof “that the loss or destruction of the document has been sufficiently explained and that the mishap was an innocent one” (People v Joseph, 86 NY2d 565, 570 [1995]; see Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 644 [1994]). The sister testified that she listened to and saved the message several times, but that it was apparently automatically deleted after a certain period of time, and she was unaware that the deletion would occur. As the hearsay and best evidence objections would not have been fruitful, defendant was not deprived of effective assistance due to counsel’s failure to make such objections (see People v Clarke, 110 AD3d 1341, 1344-1345 [2013], lv denied 22 NY3d 1197 [2014]).
Considering defendant’s criminal history, repeated violations of court orders, refusal to admit responsibility and his remarks at sentencing where he blamed the prosecutor, the victim and her family, the sentence is not harsh or excessive (see People v Shepherd, 83 AD3d 1298, 1302 [2011], lv denied 17 NY3d 809 [2011]; People v De Fayette, 27 AD3d 840, 840-841 [2006], lv denied 7 NY3d 754 [2006]).
Stein, J.E, Rose and Egan Jr., JJ., concur.
Ordered that the judgment is affirmed.

 We do not read defendant’s November 2011 disclosure demand to include a demand for the photographs, but he did explicitly request them in an April 2012 letter.