■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TREVAUGHN BANKS, Appellant. [50 NYS3d 583]—

Devine, J. Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered December 5, 2014, convicting defendant upon his plea of guilty of the crime of attempted criminal possession of a controlled substance in the first degree.

On December 28, 2013, state troopers stopped defendant for driving a vehicle with excessively tinted windows on the New York State Thruway in the Town of Bethlehem, Albany County. A canine sniff of the car was conducted that gave grounds for a search, after which over half a kilogram of cocaine was retrieved from the vehicle. Defendant was arrested and charged in an indictment with criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree. Following an unsuccessful motion to suppress the drugs, defendant pleaded guilty to attempted criminal possession of a controlled substance in the first degree and was sentenced to eight years in prison and five years of postrelease supervision. Defendant now appeals, focusing upon the denial of his suppression motion.

We affirm. The traffic stop was made after troopers observed the excessively tinted windows on defendant's vehicle and, as such, was justified (*see* Vehicle and Traffic Law § 375 [12-a] [b] [2]; *People v Williams*, 132 AD3d 1155, 1156 [2015], *lv denied* 27 NY3d 1157 [2016]). The limited detention that followed " 'must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance,' unless circumstances arise which furnish the police with a founded suspicion that criminal activity is afoot" (*People v Kelly*, 37 AD3d 866, 867 [2007], *lv denied* 8 NY3d 986 [2007], quoting *People v Banks*, 85 NY2d 558, 562 [1995], *cert denied* 516 US 868 [1995]; *see People v Garcia*, 20 NY3d 317, 322-323 [2012]). The hearing evidence indicated that an average traffic stop lasts 15 or 20 minutes, and there is no dispute that the initial justification for the stop had dissipated before the canine sniff occurred (*compare People v Banks*, 85 NY2d at 562-563, *with People v Rainey*, 49 AD3d 1337, 1339 [2008], *lv denied* 10 NY3d 963 [2008]). Accordingly, the rub is whether the troopers had a founded suspicion of criminality that justified further inquiry and delay (*see People v Garcia*, 20 NY3d at 322; *People v Banks*, 85 NY2d at 562).

County Court heard testimony at the suppression hearing from both troopers involved in the traffic stop of defendant and found them credible, with the account given by State Trooper David Jimenez the most pertinent here. Defendant gave Jimenez his license, registration and proof of insurance, stating that he had been browsing at outlet stores downstate and

was returning home to Albany County. The check of defendant's documentation that followed disclosed that he was on parole. Defendant's status as a parolee did not constitute a "surrender [of] his constitutional rights against unreasonable searches and seizures" (*People v Huntley*, 43 NY2d 175, 181 [1977]; *see People v Porter*, 101 AD3d 44, 47 [2012], *lv denied* 20 NY3d 1064 [2013]). Nevertheless, it was a relevant factor that "may well be significant" in assessing the reasonableness of the troopers' subsequent conduct (*People v Huntley*, 43 NY2d at 181; *see People v Driscoll*, 101 AD3d 1466, 1467 [2012]).

Jimenez testified as to how defendant's parole status, while not the cause of the canine sniff, played a major role in how the stop evolved after its inception. Jimenez understood from his prior experience that a parolee stopped for a traffic offense must immediately alert the officer to his or her status. Jimenez also knew from his interaction with other law enforcement officials that a parolee supervised in Albany County was not permitted to travel beyond an adjoining county without a written permission slip from his or her parole officer. Defendant had not told Jimenez of his parole status, then admitted that he did not have permission from his parole officer to travel to the outlet stores and had not asked for it.

This exchange occurred within the first 10 minutes of when the stop was made and, given the indications that defendant may have violated one or more conditions of his parole (*see* 9 NYCRR 8003.2 [c]), Jimenez properly sought to contact defendant's parole officer in order to clarify the situation (*see People v Harris*, 186 AD2d 148, 148 [1992]). The contact information for the parole officer listed in the police cruiser's computer was inaccurate, thwarting the efforts of Jimenez to call the parole officer and prompting him to ask defendant for the correct information. Defendant gave his parole officer's name but not a phone number, claiming that his cell phone was broken and would not turn on. Defendant then explained, without any prompting and contrary to his earlier account of just wanting to browse, that he had gone to the outlet stores to get his phone fixed. Jimenez noticed that defendant was holding the cell phone battery in his hand, however, and the phone turned on with some screen damage after defendant replaced the battery.[1] Defendant then changed his story further when the confused troopers asked if he had gotten his phone fixed or not, relating first that he had ordered a replacement phone before eventually admitting that he had not ordered anything. The

---

1. Jimenez did not attempt to access any information in the cell phone, nor did he demand that defendant do so.

troopers, considering this disingenuous and avoidable exchange in light of defendant's parole status and his nervousness throughout the traffic stop, notified defendant that a canine sniff would be conducted and summoned the canine unit. The troopers did so about 30 minutes into the traffic stop and the canine officer arrived about 20 minutes later, with the canine sniff occurring soon after.

The prolonged diet of inconsistencies and lies provided by defendant about his travels, when coupled with his parole situation and his nervous demeanor throughout the encounter, combined to give the officers a "founded suspicion of criminality" (*People v Kenon*, 291 AD2d 246, 247 [2002], *lv denied* 98 NY2d 652 [2002]; *see People v Whalen*, 101 AD3d 1167, 1168 [2012], *lv denied* 20 NY3d 1105 [2013]; *People v Tejeda*, 217 AD2d 932, 932-933 [1995], *lv denied* 87 NY2d 908 [1995]). This founded suspicion justified both the extension of the stop after its initial justification had been exhausted and the exterior canine sniff that followed (*see People v Devone*, 15 NY3d 106, 113-114 [2010]; *see also United States v Moore*, 795 F3d 1224, 1230-1231 [10th Cir 2015]; *United States v Brigham*, 382 F3d 500, 510-511 [5th Cir 2004]).[2] The dog alerted during the sniff and defendant's contention regarding the reliability of that alert, an issue that was not advanced before County Court, is unpreserved for our review (*see* CPL 470.05 [2]; *People v Neal*, 133 AD3d 920, 921 [2015], *lv denied* 26 NY3d 1110 [2016]). The alert gave the troopers probable cause to search the vehicle and recover the bookbag from the back seat that contained cocaine (*see People v Boler*, 106 AD3d 1119, 1122 [2013]; *People v Abdur-Rashid*, 64 AD3d 1087, 1089 [2009], *affd* 15 NY3d 106 [2010]). Thus, County Court properly denied the motion to suppress the cocaine.

Rose and Mulvey, JJ., concur.

Garry, J.P. (dissenting). We respectfully dissent. At the outset, it bears noting that defendant was ultimately detained by the state troopers for roughly one half hour before the canine officer was requested. We fully agree with the majority that the initial traffic stop was valid, and that the trooper was permitted to contact defendant's parole officer and ask defendant for this contact information. We dissent because defendant's parole status and his response to the request for his parole officer's phone number did not give rise to a founded suspicion of criminality, and there was no adequate basis stated in the troopers' testimony to justify the further interrogation,

---

2. Inasmuch as a founded suspicion existed to justify the canine sniff, we need not reach the issue of whether defendant also consented to the sniff.

delay at the roadside or the canine sniff, all of which occurred after the initial justification for the stop had expired (*see People v Garcia*, 20 NY3d 317, 322 [2012]; *People v Devone*, 15 NY3d 106, 110 [2010]; *People v Dunbar*, 5 NY3d 834, 835 [2005]; *People v Hollman*, 79 NY2d 181, 191 [1992]; *see generally People v De Bour*, 40 NY2d 210, 223 [1976]).

Although the majority places significant weight on defendant's parole status, the suspected technical violation of defendant's parole, without more, did not indicate criminal activity (*see* 9 NYCRR 362.5; *People ex rel. Piccarillo v New York State Bd. of Parole*, 48 NY2d 76, 80 [1979]; *People ex rel. Maggio v Casscles*, 28 NY2d 415, 418 [1971]; *compare People v Simmons*, 79 AD3d 431, 432 [2010], *lv denied* 16 NY3d 836 [2011]). Notably, the police computer system did not indicate any warrant of parole violation issued against defendant, and in fact displayed a warning not to "search or detain or arrest based solely on this [parole status] information." State Trooper David Jimenez acknowledged during his testimony that a determination of whether an individual is in violation of his or her parole is properly based upon information obtained from the parole officer, which was absent here.

We further disagree that defendant's response to the trooper's request for his parole officer's phone number gave rise to a founded suspicion. Defendant told the troopers that he could not access his parole officer's phone number because his phone would not "turn on"—and the majority notes that he was thereafter able to turn on his phone. However, Jimenez testified that, although the phone did turn on, half of the screen was black and was likely not operable. Immediately thereafter, defendant explained that he went to the shopping outlet to fix his phone, in slight contrast to his original statement during the initial stop that he went there to shop. Even taken together with his nervousness, the minimal inconsistency in these statements did not justify defendant's prolonged detention, particularly because the statements were made only after the initial justification for the stop had been exhausted (*see People v Banks*, 85 NY2d 558, 562 [1995], *cert denied* 516 US 868 [1995]; *People v Milaski*, 62 NY2d 147, 156 [1984]; *People v May*, 52 AD3d 147, 152 [2008]). Defendant's subsequent statements regarding his plans to fix his broken phone, made during his continuing detention and interrogation, were clearly beyond the scope authorized by the circumstances of the initial stop (*see United States v Sharpe*, 470 US 675, 682 [1985]; *People v Banks*, 85 NY2d at 562; *People v May*, 52 AD3d at 151). As the troopers' testimony failed to demonstrate a founded suspicion

of criminality once the initial justification for the stop had dissipated, they were not allowed to continue questioning defendant, and these answers—offered during what had become an illegal seizure—may not now be properly used to support the allegations (*see People v Banks*, 85 NY2d at 562; *People v Sobotker*, 43 NY2d 559, 565 [1978]; *see also People v Freeman*, 144 AD3d 1650, 1651 [2016]; *People v Young*, 258 AD2d 604, 604 [1999], *lv denied* 93 NY2d 903 [1999]). Accordingly, we would reverse County Court's order denying defendant's suppression motion.

Clark, J., concurs. Ordered that the judgment is affirmed.