People v Rudolph (2019 NY Slip Op 01675)





People v Rudolph


2019 NY Slip Op 01675


Decided on March 7, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 7, 2019

108642

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
WHIRLEE RUDOLPH, Appellant.

Calendar Date: January 15, 2019

Before: Egan Jr., J.P., Devine, Rumsey and Pritzker, JJ.


Stephen W. Herrick, Public Defender, Albany (Jessica M. Gorman of counsel), for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeals (1) from a judgment of the County Court of Albany County (Lynch, J.), rendered February 18, 2016, convicting defendant upon his pleas of guilty of the crimes of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree, and (2) by permission, from an order of said court, entered April 7, 2017, which denied defendant's motion pursuant to CPL 440.10 and 440.20 to vacate the judgment of conviction and set aside the sentence, after a hearing.
In March 2014, defendant was charged by a five-count indictment with, among other things, criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree stemming from a traffic stop that occurred in July 2015 when defendant was pulled over in the City of Albany for having tinted windows. County Court, after a hearing, denied defendant's motion to suppress, among other things, "tangible seized property" and defendant subsequently entered a guilty plea to criminal possession of a controlled substance in the third degree in full satisfaction of the indictment. As a condition of the plea agreement, defendant agreed to waive his right to appeal, both orally and in writing. Defendant was released on bail pending sentencing, but, prior to sentencing, the People moved to vacate defendant's release status due to a new arrest. Subsequently, the parties agreed to a global plea deal wherein defendant would enter a guilty plea on the new charge — criminal possession of a controlled substance in the fourth degree — in exchange for a sentence of two years in prison, plus three years of postrelease supervision, to be served concurrently with an enhanced sentence of 12 years as a result of his previous guilty plea. As a condition of his global plea deal, defendant waived his right to appeal, orally and in writing, from the conviction and sentence, including the enhanced sentence on the prior conviction. Defendant was sentenced accordingly.
Defendant later moved pro se pursuant to CPL 440.10 and 440.20 to vacate the judgment of conviction and to set aside his sentence based upon ineffective assistance of counsel. County Court subsequently appointed counsel for defendant and a hearing was held, during [*2]which defendant's trial counsel, Cheryl Coleman, testified. After the hearing, the court denied defendant's motion. Defendant now appeals from both the judgment of conviction and, by permission, the denial of his CPL article 440 motion.
We turn first to defendant's contentions regarding County Court's denial of his suppression motion. Initially, we note that, despite defendant executing a valid waiver of appeal in connection with his plea to criminal possession of a controlled substance in the third degree (see People v McDuffie, 89 AD3d 1154, 1156 [2011], lv denied 19 NY3d 964 [2012]), we are reaching the merits of defendant's argument due to an ambiguous statement made by the court during the plea proceeding regarding his right to appeal from the adverse suppression hearing ruling. As to the merits, the traffic stop was made after Jeffrey Devine, a State Trooper, observed excessively tinted windows on defendant's vehicle and, as such, was justified (see Vehicle and Traffic Law § 375 [12-a] [b] [2]; People v Banks, 148 AD3d 1359, 1360 [2017]). A "limited seizure of [a] vehicle's occupant must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance, unless circumstances arise which furnish the police with a founded suspicion that criminal activity is afoot" (People v Kelly, 37 AD3d 866, 867 [2007] [internal quotation marks and citation omitted], lv denied 8 NY3d 986 [2007]; see People v Banks, 148 AD3d at 1360). "[G]reat weight is accorded the trial court's determination at a suppression hearing and, absent a basis in the record for finding that the court's resolution of credibility issues was clearly erroneous, its determinations are generally not disturbed" (People v Williams, 25 AD3d 927, 928 [2006] [internal quotation marks and citations omitted], lv denied 6 NY3d 840 [2006]; see People v Mattis, 108 AD3d 872, 874 [2013], lvs denied 22 NY3d 957 [2013]).
Devine testified at the suppression hearing that, after approaching the passenger side of defendant's vehicle, defendant rolled down the window and Devine asked him for his license and registration. Upon receiving defendant's license, Devine noticed that defendant had a Brooklyn address, so he asked defendant where he was going. Defendant responded that he was visiting someone in Albany, but could not tell the officer who the person was or where the person lived. After Devine ran defendant's license, he found that there was an active out-of-state warrant and that defendant was on federal probation. Devine returned to defendant's car and asked him to step out of the vehicle so Devine could interview him further about the warrant and probation. Devine explained that he asked defendant to step out of the car because that was where Devine felt most comfortable and that he was concerned that if defendant was still sitting in the driver side of the car, he could flee the scene, which has happened on numerous occasions. Defendant got out of the car and, in response to questioning by Devine, indicated that the warrant was still outstanding and that he was allowed to be outside of Brooklyn despite his federal probation status. Devine then used his personal cell phone to call defendant's probation officer, who informed Devine that defendant did not have permission to leave the Brooklyn area and requested to speak to defendant.
Devine testified that while defendant was on the phone, he indicated to defendant that he was going to check the tint of the window using his tint meter; defendant agreed to his request by nodding his head. While checking the tint, Devine had to roll down the window and open the door and, when he did, he smelled "an odor of mari[h]uana emanating from the inside of the vehicle." After defendant said that the odor was from hemp used for clothing, Devine conducted a search of defendant's vehicle, starting with the interior, and, when he found nothing there, he proceeded to the trunk where he located a black duffel bag that contained approximately four pounds of marihuana. Devine also located bags containing a white powdery substance that he believed to be cocaine and an "off-white substance with a yellowish tint that tested positive for methamphetamines" inside of a Nike shoe box.
Based on the foregoing, County Court did not err in denying defendant's motion to suppress. Even though Devine did not smell marihuana when he approached the passenger side of the vehicle the first two times, the fact that he did smell marihuana when he approached the driver side, after rolling down the window and opening the door, was enough to establish probable cause to search the vehicle (see People v Horge, 80 AD3d 1074, 1074-1075 [2011]; [*3]People v Gaines, 57 AD3d 1120, 1121 [2008]). Additionally, despite defendant's contention that County Court should not have considered Devine's testimony "frank, candid and trustworthy" with "the general force and flavor of credibility," this Court gives great weight to the suppression court's credibility findings, and here there is no basis to conclude that the credibility finding was erroneous (see People v Mattis, 108 AD3d at 864; People v Williams, 25 AD3d at 927). Nor are we persuaded by defendant's assertion that his detention was unlawfully prolonged. Evidence at the hearing established that Devine pulled defendant over at approximately 2:40 p.m. and a tow truck was called for defendant's car at 3:17 p.m., making the stop 37 minutes long. Devine acted within his discretion to run defendant's license, and when he found out about defendant's out-of-state warrant and federal probation, it was reasonable for him to question defendant and attempt to contact defendant's probation officer. Also, Devine's request to check the tint of the window was related to the stop, which led Devine to smell the marihuana. Thus, this detention was "reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance" (People v Banks, 148 AD3d at 1360 [internal quotation marks and citations omitted]).
We turn next to defendant's assertion that his enhanced sentence of 12 years is harsh and excessive. Initially, at the time that defendant entered his guilty plea to criminal possession of a controlled substance in the third degree, County Court informed defendant that, if he were to commit a new crime while out on bail pending sentencing, his plea would remain in effect and it would not be bound by the sentencing agreement and instead could impose a sentence up to 12 years plus three years of postrelease supervision. Given that the court adequately advised defendant of the consequences of violating the plea conditions, defendant's challenge to the enhanced sentence is precluded by his valid appeal waiver (see People v Bateman, 151 AD3d 1482, 1484 [2017], lv denied 31 NY3d 981 [2018]; People v Gilbert, 145 AD3d 1196, 1197 [2016], lvs denied 28 NY3d 1184, 1187 [2017]). Moreover, at the time that defendant entered into the global plea agreement after being arrested while on bail, he executed a second waiver of appeal that the court specifically advised defendant applied "to both the conviction and the sentence [on the new charge], including the enhanced sentence on the prior conviction." Defendant has not advanced any arguments that this appeal waiver was anything other than knowing, intelligent and voluntary. This second appeal waiver likewise precludes any challenge to the concurrent two-year sentence imposed on defendant's conviction of criminal sale of a controlled substance in the fourth degree (see People v Moore, 167 AD3d 1158, 1159 [2018]; People v Horton, 167 AD3d 1166, 1167 [2018]).
We now turn to defendant's arguments regarding County Court's denial of his CPL article 440 motion after a hearing. Defendant's motion to vacate the judgment asserted three different grounds for ineffective assistance of Coleman, defendant's trial counsel — the failure to call certain witnesses at the suppression hearing, the failure to communicate plea offers and a conflict of interest involving another lawyer in Coleman's law firm. In general, "an ineffective assistance claim does not lie so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Roshia, 133 AD3d 1029, 1031 [2015] [internal quotation marks, brackets and citation omitted], affd 28 NY3d 989 [2016]; see People v Cassala, 130 AD3d 1252, 1253 [2015], lv denied 27 NY3d 994 [2016]). In the context of a plea, a "defendant has been afforded meaningful representation when he or she receives an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of counsel" (People v Jackson, 128 AD3d 1279, 1280 [2015] [internal quotation marks and citation omitted], lv denied 26 NY3d 930 [2015]; see People v Wares, 124 AD3d 1079, 1080 [2015], lv denied 25 NY3d 993 [2015]).
First, we find no merit to defendant's argument that Coleman was ineffective for failing to call certain witnesses at the suppression hearing as defendant has not demonstrated that this was not a strategic decision (see People v Thorpe, 141 AD3d 927, 934-935 [2016], lv denied 28 NY3d 1031 [2016]; People v Gokey, 134 AD3d 1246, 1247-1248 [2015], lv denied 27 NY3d 1069 [2016]). Coleman testified that her primary strategy was to attack the credibility of Devine, which is evident from the record of the hearing. She also testified that she recalled discussing [*4]with defendant the possibility of calling another trooper who was present at the scene, but that, based on her years of experience as a defense attorney, she did not think that it was advisable. Coleman also explained why, in her experience, she did not see any advantage to having defendant testify at the suppression hearing. Therefore, it is evident from the record that Coleman's strategy, while ultimately not successful, does not amount to ineffective assistance of counsel (see People v Tomasky, 36 AD3d 1025, 1027 [2007], lv denied 8 NY3d 927 [2007]; People v Curry, 294 AD2d 608, 611 [2002], lv denied 98 NY2d 674 [2002]).
Next, we find no merit to defendant's claim that Coleman's alleged failure to communicate plea offers constituted ineffective assistance of counsel. "In order to prevail on an ineffective assistance of counsel claim based upon the defense counsel's failure to adequately inform the defendant of a plea offer, the defendant has the burden of establishing that the People made the plea offer, that the defendant was not adequately informed of the offer, that there was a reasonable probability that defendant would have accepted the offer had counsel adequately communicated it to him or her, and that there was a reasonable likelihood that neither the People nor the court would have blocked the alleged agreement" (People v Brett W., 144 AD3d 1314, 1316 [2016] [internal quotation marks, brackets and citations omitted]; see People v Fernandez, 5 NY3d 813, 814 [2005]). Inasmuch as defendant failed to set forth any particular offer of which he was not advised, but rather vaguely referenced what he believed to be several uncommunicated offers, defendant's testimony and motion papers fail to establish any of the necessary elements to prevail on this claim.
Finally, we disagree with defendant that Coleman's representation was ineffective based upon a conflict of interest. "A conflict-based ineffective assistance of counsel claim involves two inquiries. First, the court must assess whether there was a potential conflict of interest in a defendant's representation. Second, a defendant must show that the conduct of his [or her] defense was in fact affected by the operation of the conflict of interest, or that the conflict operated on the representation" (People v Abar, 99 NY2d 406, 409 [2003] [internal quotation marks and citation omitted]; see People v Wright, 129 AD3d 1217, 1219 [2015], affd 27 NY3d 516 [2016]). The conflict of interest here stems from Coleman hiring Kurt Haas, a lawyer who worked for the Albany County District Attorney (hereinafter the DA) as an Assistant District Attorney (hereinafter ADA) prior to working for Coleman. In his capacity as ADA, Haas was assigned to handle the case surrounding defendant's first arrest. The testimony revealed that not much occurred on the case while Haas was still with the DA's office, as his and Coleman's discussions regarding resolution never came to fruition, and when Haas left to work for Coleman, the file was reassigned and indicted by the newly assigned ADA shortly thereafter. Both Haas and Coleman testified that to avoid a potential conflict of interest, among other things, Haas would play no role in any of Coleman's cases that Haas handled when he was at the DA's office. However, Haas met with defendant after he was arrested while out on bail pending sentencing on the first case. Haas also represented defendant at his final sentencing, when the enhanced sentence was imposed, as well as the sentence on the new charge, all of which had already been pleaded to. At sentencing, a brief issue arose with the predicate felony offender statement, but that issue was resolved by defendant prior to Haas having the opportunity to interject. After resolution of the issue, the agreed-upon sentence was imposed.
"[T]here is an inherent conflict of interest where a defense attorney who initially represented a defendant and[,] during the pendency of the criminal proceeding[,] then joined the [DA's] office. However, the concerns that arise in that scenario are not present" in cases, such as here, where the reverse occurs and an ADA assumes a position as a defense attorney (Matter of State of New York v David J., 167 AD3d 1251, 1255 [2018] [internal quotation marks and citation omitted]; see People v Abar, 99 NY2d at 410). Here, defendant has set forth no evidence of information that Haas obtained about defendant during his prior employment that compromised his representation of defendant and would create a conflict of interest. However, even if he had, defendant's argument still must fail as we do not find any evidence that this potential conflict of interest operated on the defense because Haas did not make any statements of substance at defendant's sentencing, and the agreed-upon sentence was imposed without issue [*5](see People v Abar, 99 NY2d at 410). We find defendant's remaining contentions, to the extent not specifically addressed herein, to be lacking in merit.
Egan Jr., J.P., Devine and Rumsey, JJ., concur.
ORDERED that the judgment and order are affirmed.