◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONNIE MORRIS, Appellant. [962 NYS2d 760]—

Stein, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered March 31, 2011, convicting defendant upon his plea of guilty of the crime of attempted criminal possession of a weapon in the second degree.

In the summer of 2010, a detective with the City of Albany Police Department received a tip that was telephoned into the Community Response Unit from a concerned citizen. The concerned citizen described suspicious behavior—with suggestions of drug activity—of a group of individuals congregating on the steps of 91 Dana Avenue in the City of Albany. When this concerned citizen called the detective again on September 8, 2010 and indicated that the group had returned,[1] two police officers were dispatched to that location to gather basic information from the individuals. The officers arrived at the scene and observed approximately eight people sitting on the steps. As the officers approached the group, one of them—later identified as defendant—abruptly stood up and attempted to enter the building, but could not gain entry because the door was apparently locked. One of the officers followed defendant up the steps, placed a hand on defendant's shoulder and asked defendant

---

1. This call followed an earlier call that evening, in which the concerned citizen reported to the detective that several members of the group had been engaged in a knife fight. Although patrol units from the police department had been dispatched at that time, there is no record evidence that any individual had been stopped or asked for pedigree information.

why he was in a hurry. Defendant turned around, shoved the officer, said that he was "past curfew" and, after a brief struggle, ran down the steps and took off running down the street. The officers pursued defendant and, at one point during their chase, observed defendant reach into his waistband and throw something to the ground. A subsequent canine search of the area resulted in the discovery of, among other things, a handgun.

Defendant was later identified by the police as the individual from the steps who had fled from them. He was arrested and subsequently charged by indictment with criminal possession of a weapon in the second and third degrees. Defendant moved to suppress the handgun arguing, among other things, that the conduct of the police constituted an unlawful seizure and went beyond the appropriate *De Bour* level of inquiry (*see People v De Bour*, 40 NY2d 210 [1976]). Following a hearing, County Court denied defendant's motion, and defendant subsequently pleaded guilty to attempted criminal possession of a weapon in the second degree, in full satisfaction of the indictment. In accord with the plea agreement, defendant was sentenced as a second felony offender to a prison term of seven years, followed by five years of postrelease supervision.[2] This appeal ensued.

We affirm. It is well settled that "police officers acting in their law enforcement capacity may approach an individual and request basic information—such as identification and destination—in a nonthreatening manner, provided they have an objective credible reason to do so, not necessarily indicative of criminality" (*People v Savage*, 59 AD3d 817, 819 [2009], *lv denied* 12 NY3d 920 [2009]; *see People v Garcia*, 20 NY3d 317, 322 [2012]; *People v Hollman*, 79 NY2d 181, 184-185 [1992]; *People v De Bour*, 40 NY2d at 223; *People v Jordan*, 9 AD3d 792, 794 [2004], *lv denied* 3 NY3d 708 [2004]). Police may initiate a more intrusive form of contact—the common-law right to inquire—where there is a "founded suspicion that criminal activity is afoot" (*People v De Bour*, 40 NY2d at 223; *see People v Hollman*, 79 NY2d at 191; *People v Oldacre*, 53 AD3d 675, 676 [2008]). A level three inquiry—a forcible stop and detention—is permitted upon a reasonable suspicion that a particular person has committed a crime (*see People v Hollman*, 79 NY2d at 185; *People v De Bour*, 40 NY2d at 223). To be sure, "[t]hese encounters can be 'dynamic situations during which the degree of belief possessed at the point of inception may blossom by virtue of responses or other matters which authorize . . . ad-

---

**2.** As part of his plea, defendant waived his right to appeal, but specifically retained the right to appeal the suppression ruling.

ditional action as the scenario unfolds' " (*People v Tillery*, 60 AD3d 1203, 1205 [2009], *lv denied* 12 NY3d 860 [2009], quoting *People v De Bour*, 40 NY2d at 225). Moreover, in evaluating the conduct of the police, we accord great weight to the suppression court's factual findings that are supported by the record (*see People v Prochilo*, 41 NY2d 759, 761 [1977]; *People v Whalen*, 101 AD3d 1167, 1168 [2012]; *People v Merritt*, 96 AD3d 1169, 1170 [2012], *lv denied* 19 NY3d 1027 [2012]).

Here, the two police officers were directed to approach 91 Dana Avenue because a tip had suggested that individuals at that location might be engaging in drug activity and a knife fight had taken place there earlier that same evening. The officers arrived at the location in a marked police vehicle with their sirens off and walked up to the group, including defendant, in a non-threatening manner, without any intention of making an arrest. As defendant abruptly stood up and attempted to enter the building, one officer walked up the steps behind defendant, placed a hand on his shoulder and asked him why he was in a hurry. The evidence presented at the hearing supports a finding that the officer neither threatened nor intimidated defendant when he made his inquiry and, further, that when he touched defendant on the shoulder with his hand, the officer did not restrain defendant or seize him in any manner. In fact, the officer described this contact as a "[t]ap" to "engage [defendant] in a conversation." Likewise, the officer testified that he had not purposely blocked defendant's movement in any way on the stairs, and the evidence supports a finding that the manner in which the officers stood on the steps did not restrict defendant's liberty in any fashion.[3]

While defendant had a constitutional right to refuse to answer the inquiries of the police (*see People v Howard*, 50 NY2d 583, 592 [1980], *cert denied* 449 US 1023 [1980]; *People v Adams*, 194 AD2d 102, 106 [1993]), he told the officers that he was past his curfew. This information—which suggested the possibility that defendant was a parole violator—coupled with the escalation of defendant's conduct, in which he became physical with at least one of the officers before he took off running down the street, escalated the *De Bour* level of inquiry and provided, at the very least, "reasonable suspicion to justify a greater level of police intrusion" and the pursuit of defendant (*People v McKinley*, 101 AD3d 1747, 1749 [2012]; *see People v Sierra*, 83

---

**3.** It was only after defendant turned around, stated that he was past curfew, shoved the officer and began wrestling with him that the officer grabbed defendant so that he would not hurt anyone. At this point, the officer's restraint was appropriate in light of the elevated encounter.

NY2d 928, 929 [1994]; *People v Holmes*, 96 AD3d 1421, 1422 [2012], *lv denied* 19 NY3d 1026 [2012]). It was during this justified pursuit—and not as a result of any search of defendant—that the weapon was abandoned by defendant and ultimately recovered by the police (*see People v Soscia*, 96 AD3d 1081, 1081-1082 [2012], *lv denied* 19 NY3d 1105 [2012]; *compare People v Crawford*, 89 AD3d 422, 424 [2011]). "As we perceive no impropriety in [the police officers'] initiation of the encounter with defendant and conclude that the parameters of [*De Bour*] were never exceeded, [County] Court properly refused to suppress the fruits of their inquiry" (*People v Jordan*, 9 AD3d at 795).

Defendant's remaining contentions have been considered and found to be meritless.

Rose, J.P., Spain and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

