People v Cooper (2021 NY Slip Op 06005)





People v Cooper


2021 NY Slip Op 06005


Decided on November 4, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 4, 2021

111000
[*1]The People of the State of New York, Respondent,
v
Theodore R. Cooper, Appellant.

Calendar Date:September 14, 2021

Before:Garry, P.J., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Adam H. Van Buskirk, Auburn, for appellant.
Michael A. Korchak, District Attorney, Binghamton (Rita M. Basile of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered October 12, 2018, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree.
A police officer with the Village of Endicott Police Department initiated a traffic stop of a vehicle in which defendant was in the rear seat. A subsequent search of the vehicle revealed a handgun and a loaded magazine in a lockbox. In connection with this incident, defendant was charged by indictment with criminal possession of a weapon in the second degree. Prior to trial, defendant moved to suppress certain statements that he made, as well as the retrieved handgun and magazine. County Court denied the motion. A jury trial ensued, after which defendant was convicted as charged. The court thereafter sentenced defendant, as a second violent felony offender, to a prison term of seven years, to be followed by five years of postrelease supervision. Defendant appeals. We affirm.
Turning first to the suppression motion, the police officer testified at the suppression hearing that he observed a vehicle abruptly engage its turn signal when it was less than 10 feet prior to making the turn. The officer engaged his vehicle's emergency lights, but the vehicle did not immediately stop. The officer then engaged his emergency sirens at two different times, after which the vehicle stopped. The officer testified that he first asked the driver to exit the vehicle and individually spoke with her. The officer then did the same with defendant and the front seat passenger and, according to the officer, his conversations with all of them took less than 10 minutes. The officer stated that he received inconsistent answers to his questions about where they were going, where they had been and where defendant was picked up. The officer asked for consent to search the vehicle, which he received.
The officer testified that, upon a search of the vehicle, he observed a lockbox under the seat where defendant had been sitting. Defendant initially denied knowing that the lockbox was there but subsequently admitted to his knowledge of it.[FN1] The officer advised defendant that, because defendant did not consent to opening the lockbox, he would do a canine search of the vehicle. The officer did so and the canine alerted to the seat where defendant had been sitting and to the lockbox. After the canine search, defendant told the officer that he was supposed to deliver the lockbox to another person. The officer stated that defendant then agreed to open the lockbox but was apprehensive to do so in public because he did not want to give the appearance that he was cooperating with law enforcement. The officer gave defendant "the option of being handcuffed, to give the appearance to anyone who may be watching that he wasn't cooperating with the police," which defendant accepted.
The officer stated that he handcuffed defendant and took him to the police station[*2]. At the station, defendant, who was no longer handcuffed, was taken to a garage area, and he confirmed to the officer that a handgun was in the lockbox. Defendant was given a screwdriver, and he opened the lockbox. The officer testified that "a firearm and a loaded magazine" were in the lockbox. Defendant was then brought into a briefing area of the police station and was read his Miranda rights.
Contrary to defendant's claim, the officer was authorized to direct all passengers to exit the vehicle following the traffic stop (see People v Robinson, 74 NY2d 773, 775 [1989], cert denied 493 US 966 [1989]). Furthermore, in view of the inconsistent answers provided by the driver, the front seat passenger and defendant to the officer's questions and the fact that the vehicle did not immediately stop after the officer engaged his vehicle's emergency lights, the officer had founded suspicion that criminality was afoot and, therefore, a valid basis existed to request consent to search the vehicle (see People v Cummings, 157 AD3d 982, 984 [2018], lv denied 31 NY3d 982 [2018]; People v Nelson, 156 AD3d 1112, 1114 [2017], lvs denied 31 NY3d 1145, 1151, 1152 [2018]). The nonthreatening and nonaccusatory questions asked by the officer were proper, and defendant was neither handcuffed nor otherwise restrained while the officer searched the vehicle and questioned him (see People v Blanche, 183 AD3d 1196, 1198 [2020], lv denied 35 NY3d 1064 [2020]; People v Martin, 156 AD3d 956, 958 [2017], lv denied 31 NY3d 985 [2018]). As to the lockbox, defendant consented to opening it and, in fact, did so himself without duress or being coerced to do so. Even if he had not consented, once the canine alerted to the lockbox, probable cause existed to search it (see People v Banks, 148 AD3d 1359, 1362 [2017]). Accordingly, County Court correctly denied that part of the motion seeking suppression of the physical evidence.
Defendant also takes issue with County Court's finding that his conversations with the officer that took place subsequent to the canine search and prior to the opening of the lockbox were noncustodial in nature. The record, however, reflects that, during this period, defendant never indicated that he wanted to leave nor did the officer tell defendant he was not free to do so. Although defendant was eventually handcuffed and transported in a police car, defendant agreed to this arrangement so as not to be seen in public as cooperating with law enforcement. Based on these unique circumstances and noting, as the court did, that the handcuffs were removed once defendant was at the station, defendant's oral statements were freely made and not while he was under custodial interrogation (see People v Hicks, 68 NY2d 234, 240 [1986]; People v Fragassi, 178 AD3d 1153, 1156 [2019], lv denied 34 NY3d 1128 [2020]; People v Weishaupt, 118 AD3d 1100, 1102-1103 [2014]; People v Brown, 107 AD3d 1305, 1306 [2013], lv dismissed 23 NY3d 1018 [2014]). As such, defendant's [*3]oral statements were admissible.
Defendant challenges the verdict as being against the weight of the evidence. As relevant here, for criminal possession of a weapon in the second degree, the People were obligated to prove that defendant possessed any loaded firearm outside of his home or place of business (see Penal Law § 265.03 [3]). The officer's testimony at trial largely mirrored his suppression hearing testimony. In addition to the foregoing, another police officer testified that he successfully test-fired the handgun that was retrieved from the lockbox. The jury also saw a video depicting defendant's interview at the police station wherein defendant admitted that he picked up the lockbox to deliver it to another person, that he was aware that a handgun was inside of it and that he was shown the handgun. In view of this evidence, a contrary result would have been unreasonable and, therefore, the verdict will not be disturbed (see People v Cloonan, 166 AD3d 1063, 1064-1065 [2018], lv denied 35 NY3d 941 [2020]; People v Hadfield, 119 AD3d 1224, 1226 [2014], lv denied 24 NY3d 1002 [2014]).
Defendant contends that County Court failed to grant his request to instruct the jury as to the lesser included offense of criminal possession of a weapon in the fourth degree.[FN2] Based on the evidence that the handgun was loaded, "the jury could not have reasonably concluded from the trial evidence that defendant committed the lesser offense but not the greater" (People v Hill, 130 AD3d 1305, 1306 [2015] [internal quotation marks, brackets and citations omitted], lv denied 27 NY3d 999 [2016]; see People v Laing, 66 AD3d 1353, 1354-1355 [2009], lv denied 13 NY3d 908 [2009]). The court thus did not err in denying defendant's request.
Defendant failed to object to County Court's Sandoval compromise at the close of the Sandoval hearing and, consequently, his challenge to it is unpreserved (see People v Shackelton, 177 AD3d 1163, 1166 [2019], lv denied 34 NY3d 1162 [2020]). Defendant's contention that the court improperly curtailed the scope of his summation is without merit (see People v Smith, 16 NY3d 786, 787-788 [2011]; People v Paixao, 23 AD3d 677, 678 [2005], lv denied 6 NY3d 816 [2006]). Defendant's argument that the sentence was harsh and excessive is likewise without merit given that the term imposed by the court was the minimum permissible (see Penal Law § 70.04 [3] [b]; see also People v Duggins, 161 AD3d 1445, 1447 [2018], lv denied 32 NY3d 937 [2018]). Defendant's remaining assertions have been considered and do not provide a basis for reversal.
Garry, P.J., Pritzker, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: According to the officer, both the driver and front seat passenger reported that defendant brought the lockbox into the vehicle with him.

Footnote 2: Contrary to the People's assertion, this argument is properly before us because defendant specifically requested that criminal possession of a weapon in the fourth degree be charged as a lesser included offense of criminal possession of a weapon in the second degree (see People v Hoke, 62 NY2d 1022, 1023 [1984]; People v Rivera, 70 AD3d 1177, 1183 n 4 [2010], lvs denied 14 NY3d 891, 15 NY3d 855 [2010]; compare People v David, 255 AD2d 620, 621 [1998]).