People v Medina (2022 NY Slip Op 05562)

People v Medina

2022 NY Slip Op 05562

Decided on October 6, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 6, 2022

111906
[*1]The People of the State of New York, Respondent,
v
Victor Medina, Appellant.

Calendar Date:September 13, 2022

Before:Garry, P.J., Egan Jr., Clark, Fisher and McShan, JJ.

Cliff Gordon, Monticello, for appellant.
Meagan K. Galligan, District Attorney, Monticello (Lisa M. Bondarenka of counsel), for respondent.

Clark, J.
Appeal from a judgment of the County Court of Sullivan County (Frank J. LaBuda, J.), rendered June 11, 2019, convicting defendant upon his plea of guilty of the crime of criminal possession of a weapon in the second degree.
Following a traffic stop, defendant was indicted and charged with criminal possession of a weapon in the second degree, criminal possession of a controlled substance in the third degree (two counts), criminal possession of a controlled substance in the fourth degree, criminal possession of a controlled substance in the seventh degree (four counts), criminally using drug paraphernalia in the second degree, criminal possession of a weapon in the fourth degree, criminal possession of stolen property in the fourth degree and three traffic violations. After County Court denied defendant's motion to suppress certain physical evidence and statements, defendant agreed to plead guilty — in full satisfaction of the indictment — to criminal possession of a weapon in the second degree with the understanding that he would be sentenced to a prison term of eight years followed by five years of postrelease supervision. The plea agreement also required defendant to waive his right to appeal, including his right to challenge County Court's suppression ruling. Defendant pleaded guilty in conformity with the plea agreement, and County Court sentenced defendant as a second felony offender to the agreed-upon term of imprisonment. Defendant appeals, solely challenging the denial of his motion to suppress his statements and certain physical evidence.
The People concede — and our review of the record confirms — that defendant's waiver of the right to appeal is invalid (see People v Moore, 203 AD3d 1401, 1401 [3d Dept 2022], lv denied 38 NY3d 1034 [2022]; People v Beach, 197 AD3d 1440, 1440-1441 [3d Dept 2021]). Thus, in the absence of a valid appeal waiver, defendant's challenge to County Court's suppression ruling survives his guilty plea and is properly before us (see People v Butler, 196 AD3d 28, 30 [3d Dept 2021]; People v Henry, 133 AD3d 1085, 1086 [3d Dept 2015]).
Turning to the merits, "a stop of a motor vehicle is justified when an officer observes or reasonably suspects that a violation of the Vehicle and Traffic Law has occurred" (People v Green, 80 AD3d 1004, 1004-1005 [3d Dept 2011]; see People v Martin, 156 AD3d 956, 957 [3d Dept 2017], lv denied 31 NY3d 985 [2018]; People v James, 155 AD3d 1094, 1095 [3d Dept 2017], lv denied 30 NY3d 1116 [2018]). In conjunction therewith, "a police officer may, as a precautionary measure and without particularized suspicion, direct the occupants of a lawfully stopped vehicle to step out of the car" (People v Martin, 156 AD3d at 957 [internal quotation marks and citation omitted]; see People v Wideman, 192 AD3d 1384, 1385 [3d Dept 2021], affd 38 NY3d 1067 [2022]; see also People v Cooper, 199 AD3d 1061, 1062 [3d Dept 2021], lv denied 38 NY3d 926 [2022]). Additionally, "[a] police officer may request [*2]consent to search a vehicle if, during a traffic stop, the officer develops a founded suspicion that criminality is afoot" (People v Hayden, 155 AD3d 1309, 1310 [3d Dept 2017]; see People v Cooper, 199 AD3d at 1062; People v Whalen, 101 AD3d 1167, 1168 [3d Dept 2012], lv denied 20 NY3d 1105 [2013]). Such founded suspicion, in turn, may stem from a defendant's demeanor, as well as any inconsistencies or inaccuracies in the information that the defendant has provided (see People v Cooper, 199 AD3d at 1062; People v Whalen, 101 AD3d at 1168). In this regard, although a defendant's status as a parolee does not constitute a wholesale surrender of the constitutional right against unreasonable searches and seizures, "such status may be appropriately considered in assessing the reasonableness of the [police] conduct following the initial traffic stop" (People v Blanche, 183 AD3d 1196, 1198 [3d Dept 2020], lv denied 35 NY3d 1064 [2020]; see People v Carey, 163 AD3d 1289, 1291 [3d Dept 2018], lv denied 32 NY3d 1124 [2018]; People v Banks, 148 AD3d 1359, 1361 [3d Dept 2017]).
The state trooper who initiated the traffic stop testified that he observed defendant's vehicle change lanes without signaling and cross over the fog line/rumble strip on the highway. Upon approaching the vehicle, the trooper noticed that defendant was sitting in what he described as an "unnatural position" — with his legs squeezed together and angled toward the center console and his upper torso "contorted" toward the driver side door — causing the trooper to believe that defendant was attempting to shield the right side of his body from view. In response to the trooper's inquiry, defendant indicated that he was returning from work. The trooper then asked defendant to exit the vehicle, and defendant complied. When the trooper again asked defendant where he was coming from, defendant said that he was coming from a friend's house. Defendant's inconsistent responses, coupled with the manner in which he had been sitting in the vehicle, aroused the trooper's suspicions, prompting him to run a "file check" on defendant, which revealed that he was on parole. At this point, the trooper asked if he and his partner, who had been stationed at the passenger side of defendant's vehicle, could search the car. According to the trooper, defendant answered in the affirmative.
After the trooper discovered a small bag of jewelry "tucked under the plastic paneling by the center console" of the vehicle, he and his partner again approached defendant, who was being watched over by a third state trooper who had arrived at the scene. According to the trooper, defendant was "blading himself away from [the trooper]" — defined as standing in an "aggressive" or "fighting" stance with one foot in front of the other. At this point, the trooper, who could no longer see defendant's right hand, also observed a bulge in defendant's waistband, prompting the trooper to ask defendant if he would consent to a search of his [*3]person. Defendant gave his consent and — without prompting — turned and placed his hands on the hood of the vehicle. As the trooper was patting down defendant, he "felt a hard unknown object" in the area of defendant's groin — consistent with where the trooper had observed the bulge in defendant's pants. The trooper made three attempts to retrieve the object, which was located underneath multiple layers of clothing, and each time defendant reached around and grabbed the trooper's hand. After defendant grabbed the trooper's hand for the third time, defendant was placed in handcuffs, and the trooper retrieved a folded plastic bag containing substances that field tested positive for crack cocaine and heroin, as well as certain pharmaceutical pills. Defendant then was transported to the barracks where — a State Police investigator testified — he was read his Miranda warnings, made incriminating statements and gave his consent to retrieve certain items from his residence, including a rifle. Consistent with the statements made by defendant, a subsequent search of defendant's vehicle uncovered a handgun secreted inside the armrest of the rear passenger side door.
Contrary to defendant's assertion, County Court properly denied his motion to suppress the physical evidence and incriminating statements at issue. The trooper who initiated the traffic stop observed defendant engage in various traffic infractions, thereby justifying the initial stop of defendant's vehicle (see People v Martin, 156 AD3d at 957; People v Green, 80 AD3d at 1004-1005). Additionally, and as noted previously, the trooper was entitled, "without particularized suspicion" (People v Martin, 156 AD3d at 957 [internal quotation marks and citation omitted]), to ask defendant to exit the vehicle. Defendant's inconsistent responses to the trooper's inquiries and the unusual manner in which he was sitting in the vehicle provided the founded suspicion necessary to support the trooper's request to search the vehicle (see People v Cooper, 199 AD3d at 1062; People v Whalen, 101 AD3d at 1168). In this regard, the trooper also properly took into consideration defendant's status as a parolee (see People v Carey, 163 AD3d at 1290; People v Banks, 148 AD3d at 1361). Accordingly, we have no quarrel with either the initial stop and detention of defendant or the request to search his vehicle.
With respect to the trooper's request to search defendant's person, "in order to justify a frisk of a suspect's outer clothing, a police officer must have knowledge of some fact or circumstance that supports a reasonable suspicion that the suspect is armed or poses a threat to safety" (People v Davenport, 92 AD3d 689, 690 [2d Dept 2012] [internal quotation marks and citations omitted], lv dismissed 19 NY3d 959 [2012]; see People v Wideman, 192 AD3d at 1385). Inasmuch as a bulge in a defendant's waistband "is a familiar telltale sign of a weapon" (People v Delgado, 70 AD3d 442, 443 [1st Dept 2010], lv denied 14 NY3d [*4]839 [2010]; see People v De Bour, 40 NY2d 210, 221 [1976]; People v Davenport, 92 AD3d at 691), the trooper's observation of the bulge in defendant's waistband — as well as defendant's apparent attempts to shield a portion of his body from the trooper's view — provided the trooper with a reasonable suspicion that defendant was armed or otherwise posed a threat to safety, thereby justifying the request to search his person. Finally, the investigator testified — without contradiction — that defendant waived his Miranda rights, gave various incriminating statements and consented to a search of his residence. Granting due deference to County Court's credibility determinations (see People v Wideman, 192 AD3d at 1385; People v Morris, 105 AD3d 1075, 1077 [3d Dept 2013], lv denied 22 NY3d 1042 [2013]), and upon reviewing the record as a whole, we are persuaded that County Court properly denied defendant's motion to suppress. Defendant's remaining arguments on this point, including his assertion that his consent and/or statements were coerced, have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr., Fisher and McShan, JJ., concur.
ORDERED that the judgment is affirmed.