People v Graham (2024 NY Slip Op 06627)

People v Graham

2024 NY Slip Op 06627

Decided on December 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 26, 2024

112726
[*1]The People of the State of New York, Respondent,
v
Leon I. Graham, Appellant.

Calendar Date:November 12, 2024

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Kristin A. Bluvas of counsel), for appellant.
Patrick A. Perfetti, District Attorney, Cortland, for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Cortland County (Julie A. Campbell, J.), rendered January 14, 2021, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree and false personation.
In September 2019, defendant was charged in a two-count indictment with criminal possession of a weapon in the second degree and false personation in connection with the recovery of a loaded "sawed-off" shotgun that was discovered in a duffle bag near a basketball court. Witnesses reported to the police that they observed defendant get into an argument with another player, leave the area, and return about 10 to 15 minutes later with a duffle bag which he put down near a building and then put on gloves, pulled up the hood of his sweatshirt, tied the hood tight, and returned to the area where he had the argument. When responding police officers spoke with defendant, he provided them a name that was later determined to not be his real name. During this conversation, defendant was observed moving an object from a pocket in his pants to his sweatshirt, which triggered a pat-down search and the discovery of a yellow shotgun shell that matched the shell loaded in the shotgun; defendant was detained and fingerprint analysis confirmed his real identity, resulting in his arrest.
Before trial, defendant engaged in extensive motion practice, including several unsuccessful motions relating to discovery. Defendant also moved to suppress the shotgun shell discovered in his pocket, which was denied after a hearing. Defendant then moved to dismiss the indictment pursuant to CPL 30.30, which was also denied. Following a jury trial, defendant was convicted as charged. After an unsuccessful motion to set aside the verdict pursuant to CPL 330.30, County Court sentenced defendant to a prison term of five years, to be followed by 2½ years of postrelease supervision, for his conviction of criminal possession of a weapon in the second degree, and a lesser concurrent term of 364 days of incarceration for his conviction of false personation. Defendant appeals.
We affirm. Defendant contends that his conviction of criminal possession of a weapon in the second degree is not supported by legally sufficient evidence and that the verdict is against the weight of the evidence. Specifically, defendant contends that the People failed to establish constructive possession of the shotgun based on the testimony of a single witness. In conducting a legal sufficiency analysis, "we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Santiago, 206 AD3d 1466, 1467 [3d Dept 2022] [internal quotation marks and citations omitted]). Conversely, "when undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible [*2]evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Rivera, 212 AD3d 942, 944 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1113 [2023]). "Constructive possession is proven by demonstrating that the defendant exercised dominion and control over the location where contraband was found, and exclusive access is not required" (People v Kendricks, 226 AD3d 1150, 1151 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 41 NY3d 1003 [2024]).
At trial, the People presented the testimony of a parent who was playing basketball with his son at around 11:00 p.m. on the night that the gun was discovered. He testified that defendant became confrontational with a neighbor's son, and the parent stepped in to deescalate the situation. The parent testified that he observed defendant leave the area but had a "weird feeling" about what happened, causing him to stop playing and keep watch. He testified that, about 10 to 15 minutes later, he observed defendant returning on a bicycle carrying a duffle bag. The parent testified that he watched defendant get off his bicycle and fumble in the duffle bag, then put on gloves, pull up the hood on his sweatshirt, tie it tight, and then leave the bag with the bicycle and walk over to the basketball court and began playing again. Once the game resumed, the parent testified he went over to where defendant left the duffle bag and he could see a gun inside because it was unzipped. He testified that he picked up the bag and ran to the neighbor's house. The neighbor's testimony corroborated many of these details. Although the neighbor did not see defendant return on the bicycle, he saw defendant approaching his son with a black hoodie pulled over his head and gloves on. He testified that his son and defendant started playing a basketball game for a wager when he heard a commotion inside his house near the basketball court. According to the neighbor, he went into his house and found the parent with the duffle bag that contained a single-shot shotgun with a sawed-off barrel. He then took the gun out of the bag and ejected a yellow shotgun shell that had been loaded into it. His wife then called the police, and the neighbor provided the gun, bag and shell to the responding police officers.
According to the first responding police officer, when he arrived, the parent and the neighbor met him outside the house, produced the duffle bag with the shotgun and yellow shell, and then pointed out defendant. The first police officer went to speak with defendant, who denied that the gun was his. While they were speaking, a second police officer arrived and testified that, as the first officer was moving behind defendant to [*3]continue the frisk for officer safety, he observed defendant move an object from his front pants pocket to his sweatshirt. According to both police officers, that object was identified as a yellow shotgun shell, which defendant told them that he had found on the ground earlier that evening. The first officer testified that the shotgun shells recovered from the gun and discovered in defendant's pocket were identical. The People called several other members of law enforcement, including a third police officer who determined that the shotgun was fully functional after he examined and test-fired the gun with one of the two yellow shotgun shells that were recovered during the incident.
Viewing the evidence in a light most favorable to the People, we conclude that there is a valid line of reasoning and permissible inferences which could lead a rational person to conclude that defendant had possession of the loaded firearm (see People v Moore, 223 AD3d 1085, 1093 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]; People v Watts, 215 AD3d 1170, 1173 [3d Dept 2023]). Two witnesses testified to the confrontation between the neighbor's son and defendant, and both provided a similar description of defendant when he later returned wearing a hooded sweatshirt and gloves. One witness observed defendant return with the duffle bag that contained the loaded gun. Defendant was also found possessing a yellow shotgun shell that was identical to the shell found in the loaded gun, which ultimately was determined to have been fully functional. Such evidence renders the verdict legally sufficient to support defendant's conviction of criminal possession of a weapon in the second degree (see Penal Law § 265.03 [3]; People v Kendricks, 226 AD3d at 1153; People v Bryant, 200 AD3d 1483, 1486-1487 [3d Dept 2023], lv dismissed 38 NY3d 1158 [2022]; People v Sostre, 172 AD3d 1623, 1625-1626 [3d Dept 2019], lv denied 34 NY3d 938 [2019]). As to the weight of the evidence, a different verdict would not have been unreasonable given that no one saw defendant possessing the shotgun and that the only witness who observed defendant carrying the duffle bag did so at night and admitted on cross-examination that he was twice as far away as he testified to being when he saw defendant, thereby undermining his identification. Nevertheless, when viewing all of the evidence in a neutral light and deferring to the jury's credibility determinations, including the testimonial sequence of events and the matching shotgun shells found loaded in the gun and in defendant's pocket, we find that the weight of the credible evidence supports the verdict as to criminal possession of a weapon in the second degree (see People v Malloy, 228 AD3d 1068, 1070 [3d Dept 2024], lv denied 42 NY3d 971 [2024]; People v Moore, 223 AD3d at 1093; People v Jenkins, 215 AD3d 1118, 1122 [3d Dept 2023], lv denied 40 NY3d 997 [2023]).
Next, defendant contends that his statutory right to a speedy trial was violated because the People [*4]failed to timely comply with their discovery obligations pursuant to CPL 30.30 and article 245. We are unpersuaded. The People filed their statement of trial readiness in September 2019. Contrary to defendant's contentions, the People did not revert to a state of unreadiness when the discovery reform amendments took effect on January 1, 2020 (see People v King, 42 NY3d 424, ___, 2024 NY Slip Op 03322, *2 [2024]). Although the Court of Appeals left open the question of whether the requirements of CPL article 245 applied to matters commenced before the amendments took effect, we similarly do not have the occasion to address this issue as the People did not contest this in their appellate brief.[FN1] Nevertheless, since defendant contends that the People's statement of trial readiness was illusory and that they otherwise failed to act with good faith relating to their continuing discovery obligations, our inquiry distills to one of due diligence and reasonableness of the People's conduct (see People v Bay, 41 NY3d 200, 211 [2023]; see also People v Williams, 224 AD3d 998, 999 [3d Dept 2024], lv denied 41 NY3d 1021 [2024]). In conducting this evaluation, "courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (People v Bay, 41 NY3dat 212). Moreover, given the ongoing duty to disclose materials that were previously unknown or not in the People's possession, "a valid certificate of compliance and readiness declaration will not be rendered illusory by subsequent diligent disclosures made in good faith" (People v McCarty, 221 AD3d 1360, 1362 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]; see CPL 245.50 [1-a]). "An analysis of whether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented" (People v Bay, 41 NY3d at 212 [citations omitted]).
Here, for each challenge made by defendant, County Court found that the People diligently complied with their discovery requirements. We agree. The record reveals that defendant filed multiple, similar motions seeking discovery that had already been disclosed by the People — sometimes twice disclosed. The People had also provided defendant with multiple photocopies of the entire contents of their case file, afforded access to an electronic case file and the opportunity to inspect materials at the prosecutor's office, as well as providing a witness list in compliance with defendant's requests. To the extent that defendant contends that the People failed to provide police, evidence and jail logs, defendant fails [*5]to demonstrate that such materials were related to the subject matter of the case or that he was prejudiced by the delayed disclosure or nondisclosure (see CPL 245.20 [1]; People v McCarty, 221 AD3d at 1362; see also People v Williams, 224 AD3d at 1006-1007; see generally People v Slivienski, 204 AD3d 1228, 1239 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]). Indeed, the discovery obligations under "CPL article 245 do[ ] not create a 'rule of strict liability' or require a 'perfect prosecutor' " (People v Williams, 224 AD3d at 999, quoting People v Bay, 41 NY3d at 212), and, from our review of the record, we cannot say that the People failed to satisfy their continuing discovery obligations under CPL article 245 (see People v Robbins, 206 AD3d 1069, 1072-1073 [3d Dept 2022], lv denied 39 NY3d 942 [2022]; see also People v Williams, 224 AD3d at 1006-1007).
Defendant also contends that County Court erred in denying his motion to suppress the shotgun shell recovered from his person because the police officers did not have reasonable suspicion to detain and frisk him. We disagree. "A police officer may forcibly stop and detain an individual without a warrant if the officer has a reasonable suspicion that the particular individual was involved in a felony or misdemeanor" (People v Morris, 138 AD3d 1239, 1240 [3d Dept 2016] [internal quotation marks and citations omitted], lv denied 27 NY3d 1153 [2016]; see CPL § 140.50). "Reasonable suspicion is that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand" (People v Messano, 41 NY3d 228, 232 [2024] [internal quotation marks and citation omitted]). Moreover, "in order to justify a frisk of a suspect's outer clothing, a police officer must have knowledge of some fact or circumstance that supports a reasonable suspicion that the suspect is armed or poses a threat to safety" (People v Medina, 209 AD3d 1059, 1063 [3d Dept 2022] [internal quotation marks and citations omitted], affd 40 NY3d 1022 [2023]). In conducting our review, "[g]reat weight is accorded to the trial court's determination at a suppression hearing and, absent a basis in the record for finding that the court's resolution of credibility issues was clearly erroneous, its determinations are generally not disturbed" (People v Kabia, 197 AD3d 788, 789-790 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv denied 37 NY3d 1162 [2022]).
At the suppression hearing, the first police officer testified that he encountered the parent and the neighbor who provided him with the duffle bag containing the shotgun and yellow shotgun shell. They reported to him the confrontation between defendant and the neighbor's son, and that defendant left and shortly returned with the duffle bag containing the loaded sawed-off shotgun. Based on what was reported to him and his observation of the gun, the officer went to speak with defendant who was acting[*6]"fidgety" and provided a false name. The first police officer decided to do a frisk of defendant's clothing for officer safety. While doing so, the second police officer observed defendant move an object from his left side pants pocket to the front of his sweatshirt pocket when the first officer moved from defendant's right side to behind him, suggesting an apparent attempt to avoid the detection of the object, which provided officers with reasonable suspicion that defendant was armed or otherwise posed a threat to their safety and therefore justified the further search of his sweatshirt and person (see People v Morris, 138 AD3d at 1241). In granting due deference to County Court's credibility determinations, and upon reviewing the record as a whole, we conclude that defendant's motion to suppress was properly denied (see People v Weigand, 224 AD3d 1164, 1166 [3d Dept 2024]; People v Medina, 209 AD3d at 1063; People v Wideman, 192 AD3d 1384, 1386 [3d Dept 2021], affd 38 NY3d 1067 [2022]).
We further reject defendant's claim of prosecutorial misconduct. Defendant did not object to certain statements made during opening and closing statements, therefore challenges to these statements are unpreserved (see People v Cuadrado, 227 AD3d 1174, 1184 n 8 [3d Dept 2024], lv denied 42 NY3d 969 [2024]). Nevertheless, "reversal based on prosecutorial misconduct is [only] warranted if the misconduct is such that the defendant suffered substantial prejudice, resulting in a denial of due process" (People v Almenteros, 214 AD3d 1027, 1030 [3d Dept 2023] [internal quotation marks, brackets and citations omitted], lv denied 40 NY3d 927 [2023]). Here, the prosecutor's misstatements relating to ownership of residences, how many times defendant gave a false name to the police (i.e., two times and not three times), age of a witness and how a single-shot shotgun operates does not raise to the level of a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive defendant of a fair trial (see People v Lall, 223 AD3d 1098, 1110 [3d Dept 2024], lv denied 41 NY3d 984 [2024]). Nor does the prosecutor's remark during summation that the testimony of the police officers should be accepted as true compromise defendant's right to a fair trial, particularly given that the testimony regarding defendant possessing the firearm came from the parent and not either officer (see People v Graham, 215 AD3d 998, 1008 [3d Dept 2023], lv denied 40 NY3d 928 [2023]). As to the prosecutor's comments at sentencing relating to subsequent charges involving a firearm, CPL 380.50 (1) provides that a sentencing court "must accord the prosecutor an opportunity to make a statement with respect to any matter relevant to the question of sentence," and, therefore, such statements were proper and within County Court's discretion to consider (see generally People v Hodgins, 202 AD3d 1377, 1382 [3d Dept 2022]; People v Yanus, 13 AD3d 804, 805 [3d Dept 2004]).
Based on these findings, we also [*7]reject defendant's contention that he was not afforded the effective assistance of counsel due to counsel's failure to make or preserve these issues, because "counsel will not be found to be ineffective on the basis that he or she failed to make an argument or motion that has little or no chance of success" (People v Lorenz, 211 AD3d 1109, 1113 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1112 [2023]). Although it is true that defendant had been assigned several different attorneys and motions were submitted untimely, the record as a whole fails to demonstrate that he was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for his counsels' allegedly deficient conduct (see People v Lall, 223 AD3d at 1110). Rather, counsel representing defendant engaged in extensive motion practice and aggressively cross-examined witnesses at hearings and at trial — particularly of the first police officer and the parent who was the only witness to observe defendant return with the duffle bag. Indeed, defense counsel also demonstrated familiarity with the basketball court area and was able to undermine both witnesses' observations of defendant returning to the area, including based off the line-of-sight and the dark areas unlit by the street lights. Furthermore, defense counsel made a cogent opening statement and delivered a strong summation, which was consistent with a rational trial strategy of undermining the witness testimony (see People v Starnes, 206 AD3d 1133, 1143 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]). Accordingly, based on our further review of the record and considering the evidence against him, we cannot say that defendant was not afforded the effective assistance of counsel (see People v Malloy, 228 AD3d at 1072; People v Cuadrado, 227 AD3d at 1183; People v Perulli, 217 AD3d 1133, 1138 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]).
Lastly, we reject defendant's contention that the imposed sentence was "unduly harsh or severe" (CPL 470.15 [6] [b]). County Court considered defendant's prior criminal history and his risk for recidivism, as well as some positive aspects of his life such as his close relationship with his family and hardworking nature. Defendant's contention that he was punished for exercising his right to a jury trial because his pretrial plea offer involved a shorter term of incarceration is both unpreserved and without support in the record (see People v Almenteros, 214 AD3d at 1031; see also People v McCarty, 221 AD3d at 1368). Regardless, the permissible statutory range for a conviction of criminal possession of a weapon in the second degree allows for a prison term between 3½ and 15 years (see Penal Law §§ 60.05 [4]; 70.02 [3] [b]) and a minimum period of postrelease supervision (see Penal Law §§ 70.00 [6]; 70.45 [2]), of which defendant received a five-year term of incarceration, which was on the lower end of the sentencing [*8]range, and the minimum period of postrelease supervision. In further considering defendant's lack of remorse and his prior convictions for a felony and false personation, we see no reason to disturb the sentence imposed by County Court (see People v Lall, 223 AD3d at 1111; People v Jenkins, 215 AD3d at 1122-1123). We have examined defendant's remaining contentions and have found them to be without merit or rendered academic.
Garry, P.J., Lynch, Reynolds Fitzgerald and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: We note that, although the People had initially argued before County Court that CPL article 245 did not apply, they later availed themselves of certain remedies under CPL article 245, notably precluding two of defendant's expert witnesses.