People v Roberts
2026 NY Slip Op 03476
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,
v
Braeden Roberts, Appellant.

Decided and Entered:June 4, 2026
113629
Calendar Date: April 28, 2026
Before: Garry, P.J., Clark, Fisher, Mackey And Ryba, JJ.

William E. Montgomery III, Glens Falls, for appellant.
J. Anthony Jordan, District Attorney, Fort Edward (Taylor Fitzsimmons of counsel), for respondent.

[*1]
Ryba, J.
Appeal from a judgment of the County Court of Washington County (Kelly McKeighan, J.), rendered July 29, 2022, convicting defendant upon his plea of guilty of the crimes of criminal procession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree (nine counts), criminal possession of a controlled substance in the seventh degree (four counts), criminal possession of a firearm (four counts) and criminal possession of cannabis in the first degree (two counts).
In November 2021, a State Police trooper initiated a traffic stop of defendant, then 19 years old, after observing him commit various traffic infractions. The trooper detected the odor of freshly burnt marihuana emanating from defendant's open window but, when questioned, defendant denied recently smoking marihuana. The trooper then observed, in plain view in the vehicle's center console, a small gold container which the trooper recognized as an item commonly used to conceal drugs. The trooper asked defendant if the gold container contained marihuana, and when defendant responded in the affirmative, the trooper asked, "would you mind handing that to me?" Defendant produced the container and again insisted that, to his knowledge, it contained only marihuana. However, upon opening the container, the trooper discovered a pill that appeared to be a controlled substance.FN1 The trooper directed defendant to exit the vehicle and searched the pockets of his jacket before unzipping it and searching an interior pocket, where he discovered a loaded firearm. After being arrested and advised of his Miranda rights, defendant admitted to owning another potentially illegal firearm. Police thereafter proceeded to defendant's residence, observed through a window what appeared to be a handgun, and obtained a search warrant for the premises. The search uncovered firearms, ammunition, marihuana and related paraphernalia, and a second search warrant for two safes inside the residence revealed additional weapons and other contraband.
Defendant was charged with two counts of criminal possession of a weapon in the second degree, nine counts of criminal possession of a weapon in the third degree, four counts of criminal possession of a controlled substance in the seventh degree, four counts of criminal possession of a firearm and two counts of criminal possession of cannabis in the first degree. Defendant moved to suppress his statements to police and all physical evidence recovered during the traffic stop and subsequent search of his residence. Following a Mapp/Huntley hearing, County Court largely denied the motion, finding in relevant part that the search of defendant's jacket was justified as a permissible pat-down frisk and as incident to his lawful arrest. Without waiving his right to appeal, defendant pleaded guilty to all charges and was sentenced to an aggregate prison term of 16 years, to be followed by five years of postrelease supervision. Defendant appeals.
Defendant [*2]first challenges County Court's denial of his motion to suppress the physical evidence seized during the traffic stop, arguing that it was obtained through illegal searches of the gold container and his jacket. With regard to the trooper's request to search the gold container, a police officer may request consent to search a vehicle or its contents during a traffic stop where the officer develops a founded suspicion that criminal activity is afoot (see People v Morse, 235 AD3d 1195, 1196 [3d Dept 2025], lv denied 43 NY3d 1010 [2025]; People v Medina, 209 AD3d 1059, 1062 [3d Dept 2022], affd 40 NY3d 1022 [2023]). While the odor of marihuana does not alone provide police with reasonable cause to believe a crime has been committed (see Penal Law § 222.05 [3] [a], [b]), a founded suspicion may arise from the defendant's demeanor and any inconsistencies, contradictions or inaccuracies in the information that the defendant provides during the encounter (see People v Cooper, 199 AD3d 1061, 1062 [3d Dept 2021], lv denied 38 NY3d 926 [2022]; People v Whalen, 101 AD3d 1167, 1168 [3d Dept 2012]), lv denied 20 NY3d 1105 [2013]).
The record here demonstrates that the trooper's suspicion of criminal activity was not based solely upon the odor of freshly burnt marihuana emanating from defendant's vehicle. Instead, the inconsistency between the odor of freshly burnt marihuana and defendant's denial of recent marihuana use, coupled with the trooper's plain view observation of a possible drug container within defendant's reach, was sufficient to provide the trooper with a founded suspicion that criminal activity was afoot (see People v Morse, 235 AD3d at 1196-1197; People v Medina, 209 AD3d at 1062; People v Blandford, 190 AD3d 1033, 1036 [3d Dept 2021], affd 37 NY3d 1062 [2021]). The trooper was therefore entitled to expand the scope of inquiry and request consent to examine the gold container (see People v Medina, 209 AD3d at 1062; People v Hayden, 155 AD3d 1309, 1310 [3d Dept 2017]). Accordingly, County Court properly denied defendant's motion to suppress the pill found inside the gold container.
The trooper's discovery of a controlled substance inside the container, which was inconsistent with defendant's prior explanation of its contents, together with the trooper's earlier observations, provided sufficient cause for him to request that defendant exit the vehicle. Indeed, in conjunction with any lawful traffic stop, "a police officer may, as a precautionary measure and without particularized suspicion, direct the occupants of a lawfully stopped vehicle to step out of the car" (People v Garcia, 20 NY3d 317, 321 [2012]; see People v Weigand, 224 AD3d 1164, 1165 [3d Dept 2024]; People v Watford, 211 AD3d 1106, 1108 [3d Dept 2022], lv denied 39 NY3d 1080 [2023]). At that point, a minimally intrusive pat down of defendant's outer clothing for concealed weapons would have been constitutionally permissible if the trooper observed facts and circumstances that gave [*3]rise to a reasonable suspicion that defendant was armed or posed a threat to his safety (see People v Batista, 88 NY2d 650, 653 [1996]; People v Daniels, 247 AD3d 1257, 1259 [3d Dept 2026]; People v Graham, 233 AD3d 1361, 1366-1367 [3d Dept 2024], lv denied 43 NY3d 922 [2025]; People v Weigand, 224 AD3d at 1165). Under the circumstances presented here, a more intrusive search inside the pockets and interior of defendant's jacket would have only been justified if, during a lawful pat down of the jacket's exterior, the officer felt an object reasonably believed to be a weapon, or if the search was otherwise conducted incident to a lawful arrest (see People v Drayton, 189 AD3d 1888, 1889 [3d Dept 2020], lv denied 36 NY3d 1119 [2021]; People v Hoffman, 135 AD2d 299, 302-303 [3d Dept 1988]).
County Court erred in finding that the search of defendant's jacket was a lawful pat-down frisk. The bodycam footage reveals that the trooper never patted down the exterior of defendant's jacket and instead reached directly into defendant's pockets to determine their contents, going so far as to also unzip defendant's jacket and inspect the interior pocket. As the trooper conceded in his hearing testimony, he intentionally bypassed the bounds of a protective outer pat down of defendant's clothing and proceeded directly to a full-scale search. Although the trooper testified that he conducted the search to ensure that defendant was unarmed, the record contains no evidence that the trooper possessed a reasonable suspicion that defendant was armed or posed a threat to his safety. In any event, such a suspicion would have justified only a limited pat-down of the jacket's exterior rather than an invasive search of its pockets. Moreover, although the trooper attempted to justify the search through testimony that he believed there was "something on the inside" of the left side of defendant's jacket because it felt "heavier than normal," he did not make this observation until after he had already exceeded the permissible scope of a lawful pat down by unzipping and opening defendant's jacket. Accordingly, the search cannot be sustained as a protective pat down of defendant.
County Court further erred in finding that the search of defendant's jacket was a constitutionally permissible search incident to defendant's arrest. It is now well settled that, for a search to be authorized as incident to arrest, law enforcement must either actually effectuate the arrest or possess a contemporaneous intent to arrest at the time the search is conducted (see People v Reid, 24 NY3d 615, 619 [2014]; People v Walker, 20 NY3d 122, 125-127 [2012]; People v Kalabakas, 183 AD3d 1133, 1138 n 4 [3d Dept 2020], lv denied 35 NY3d 1067 [2020]; People v Driscoll, 101 AD3d 1466, 1467 [3d Dept 2012]). Critically, the intent to arrest must relate to the offense purportedly justifying the search, even if the defendant is ultimately arrested for a different offense (see People v Reid, 24 NY3d at 618-619; [*4]People v Walker, 20 NY3d at 125-127). Absent such intent, a search cannot be retroactively legitimized based on a decision to arrest that is made only after the discovery of additional evidence during the search (see People v Reid, 24 NY3d at 619). Here, the trooper's hearing testimony unequivocally establishes that he had no intent to arrest defendant at the time he conducted the search, and that the decision to arrest was not made until after he discovered the weapon in the interior pocket of defendant's jacket. Although the trooper arguably could have arrested defendant for possessing an apparent controlled substance prior to searching him, the trooper's testimony that he had no intent to do so precludes a finding that the search was justified as incident to an arrest (see People v Reid, 24 NY3d at 619-620; People v Walker, 20 NY3d at 125-127; People v Kalabakas, 183 AD3d at 1138 n 4; People v Driscoll, 101 AD3d at 1467). In the absence of either an actual arrest or a contemporaneous intent to arrest prior to commencing the search, the intrusion cannot be sustained as a search incident to arrest. Therefore, County Court improperly denied defendant's motion to suppress the physical evidence discovered during the search of his jacket. As defendant's subsequent statements and the physical evidence seized pursuant to the search warrants naturally flowed from the illegal search of defendant's jacket, they were also subject to suppression as the fruit of the poisonous tree (see People v Suprunchik, 239 AD3d 1055, 1057 [3d Dept 2025]; People v Poulos, 233 AD3d 1169, 1175 [3d Dept 2024]). Thus, the remainder of defendant's suppression motion should have been granted.
In view of this conclusion, defendant's remaining challenges to the validity of the Miranda warnings and search warrants are academic and need not be addressed.
Garry, P.J., Clark, Fisher and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law, defendant's plea and conviction are vacated, motion to suppress granted in part, and matter remitted to the County Court of Washington County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1
Subsequent laboratory analysis confirmed that the pill was hydrocodone.